956 A.2d 399

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Todd LEIDIG, Appellant.**

Supreme Court of Pennsylvania.

Argued May 12, 2008.

Decided Sept. 24, 2008.

Daniel Andrew Pallen, Esq., for Todd Leidig.

William Ross Stoycos, Esq., Christopher D. Carusone, Esq., Ronald Thomas Williamson, Esq., PA Office of Attorney General, Philadelphia, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD, McCAFFERY, JJ.

## OPINION

Justice McCAFFERY.

We granted review in this matter to consider whether a sexual offender's plea of *nolo contendere* is invalid if the trial court fails to inform or misinforms the offender as to the extent of the registration requirements to which he or she is obligated under the act popularly known as Megan's Law II, Act of May 10, 2000, P.L. 74, *as amended,* 42 Pa.C.S. § 9791–9799.7.[1] The Superior Court determined that a defendant is not entitled to withdraw a plea if the trial court fails to inform, or even misinforms the defendant regarding the registration

---

1. The Act of October 24, 1995, P.L. 1079 (Spec.Sess. No. 1), now known as Megan's Law I, was to a significant extent ruled unconstitutional in *Commonwealth v. Donald Williams,* 557 Pa. 285, 733 A.2d 593 (1999). The General Assembly subsequently enacted Megan's Law II, whose constitutionality this Court substantially upheld in *Commonwealth v. Gomer Williams,* 574 Pa. 487, 832 A.2d 962 (2003). In the Act of November 24, 2004, P.L. 1243 (known as Megan's Law III), the General Assembly addressed several matters, including that portion of Megan's Law II held to be unconstitutional in *Gomer Williams,* concerning the penalty provisions that attached to sexually violent predators who failed to comply with registration and other requirements of the act. In the Act of November 29, 2006, P.L. 1567 (effective January 1, 2007), the General Assembly amended the legislation once again, with respect to matters not pertinent to the disposition of the present appeal. *See Commonwealth v. Lee,* 935 A.2d 865 *passim* (Pa.2007), for a more detailed discussion of the history of these successive legislative acts that individually and collectively herein shall also be referred to simply as "Megan's Law."

requirements of Megan's Law. Our review leads us to agree with the Superior Court's conclusion, and we thus affirm.

On September 18, 2002, Appellant, Todd Leidig, entered an open plea of *nolo contendere* to the charge of aggravated indecent assault in connection with his June 8, 2000 sexual assault of his thirteen-year-old stepdaughter. The plea had been negotiated with the Commonwealth, which agreed to drop two lesser charges, and was formalized in a written plea agreement. At the plea hearing, the factual basis for the plea was presented by the Commonwealth without dispute or contradiction from Appellant. During the ensuing oral plea colloquy with the court, Appellant acknowledged that he had reviewed, understood, signed, and had no questions concerning his written plea agreement. Appellant further acknowledged, *inter alia,* that (1) he understood the potential maximum penalties for aggravated indecent assault, which were once again stated during the colloquy; (2) it was in the court's discretion to decide the appropriate sentence; (3) he had not been promised anything in exchange for his plea other than the withdrawal by the Commonwealth of the two lesser charges; (4) he was surrendering his right to a jury trial and a presumption of innocence; (5) he understood that a plea of *nolo contendere* was the equivalent to a guilty plea for sentencing purposes; and (6) he had had a sufficient opportunity to review and discuss his plea with his attorney.

Further, Appellant had submitted to the court a completed, signed, and initialed written *nolo contendere* plea colloquy in which he acknowledged that, by his plea, he was surrendering many important rights, as detailed in the document. This document further established, *inter alia,* that (1) Appellant was aware of the maximum penalties for aggravated indecent assault, as set forth therein; (2) he was aware of his right to counsel and was satisfied with his counsel's representation; (3) he was not under the influence of drugs or alcohol; (4) other than under the terms of the plea agreement itself, he had not been made promises to induce his plea, nor had he been threatened; (5) the trial court would determine his sentence;

and (6) he was satisfied that his plea was voluntary and in his best interests.

At the plea hearing, there was no mention of the registration requirements of Megan's Law; rather, Appellant was informed by the trial court that, prior to sentencing, he would need to be assessed by the Sexual Offender's Assessment Board in order to determine whether he was a sexually violent predator. Appellant, following an off-the-record discussion with his attorney, indicated that he understood this procedure.

At the conclusion of the plea colloquy, the trial court (1) accepted the plea and the plea agreement as having been voluntarily and knowingly made; (2) ordered the preparation of a pre-sentence report; and (3) ordered that the matter be referred to the Sexual Offender's Assessment Board. The court made no order or statement regarding the registration requirements of Megan's Law. Subsequently, the Sexual Offender's Assessment Board issued a report concluding that Appellant was not a sexually violent predator.

On January 22, 2003, Appellant's sentencing hearing was held, at which Appellant was sentenced to a term of imprisonment of 48 to 120 months. Appellant was also advised that he was subject to the registration requirements as a sexual offender for a period of ten years following his release from incarceration, which was the registration period mandated for offenders convicted of aggravated indecent assault under the provisions of **Megan's Law I.** Later on the day of sentencing, attorneys for the Commonwealth and Appellant approached the court with the concern that the registration requirements under Megan's Law II, then in effect, would impose a lifetime registration requirement on Appellant because of his conviction of aggravated indecent assault. *See* 42 Pa.C.S. § 9795.1(b)(2) (providing that under Megan's Law II, effective July 9, 2000, individuals convicted of aggravated indecent assault are subject to lifetime registration as sexual offenders).[2] The court and the attorneys agreed that because

---

2. The lifetime registration requirement for sexual offenders convicted of aggravated indecent assault has survived all subsequent amendments to Megan's Law.

Appellant's crime had been committed while Megan's Law I was in effect, Appellant was subject to its ten-year registration requirement, not the lifetime registration requirement under Megan's Law II.

However, following imposition of sentence, an official with the Franklin County Parole and Probation Department confirmed to Appellant that he would be subject to the lifetime registration requirements of Megan's Law II. Consequently, Appellant filed a motion to withdraw his *nolo contendere* plea, averring that had he known that he would be subject to a lifetime registration requirement, he would not have pled *nolo contendere*, and therefore his plea had not been made knowingly and intelligently. Appellant also moved to modify his sentence. On February 5, 2003, the trial court denied both motions; however, in a subsequent opinion written pursuant to Pa.R.A.P.1925(a), the court opined that Appellant should be subject only to the ten-year registration requirement under Megan's Law I, not the lifetime registration requirement under Megan's Law II. Appellant filed a timely appeal to the Superior Court.

In a published decision authored by now-Justice Todd, the Superior Court affirmed; however, it disagreed with the trial court that Appellant was not subject to the registration requirements under Megan's Law II. Citing *Commonwealth v. Fleming*, 801 A.2d 1234 (Pa.Super.2002), the Superior Court concluded that Megan's Law II governed Appellant's registration requirements as a sexual offender. In *Fleming*, the defendant pled guilty to attempted criminal homicide and involuntary deviate sexual intercourse on August 9, 2000. Following the defendant's plea, the trial court, on December 6, 2000, imposed a sentence that required lifetime registration under Megan's Law II. On December 13, 2000, the defendant filed a motion for modification of sentence wherein he argued that he should be subjected to registration for only ten years because the underlying offense had occurred on September 18, 1999, prior to the effective date of the lengthier registration requirements under Megan's Law II. The trial court denied the motion, and on appeal, the Superior Court affirmed,

holding that the defendant was subject to the lifetime registration requirement under Megan's Law II. *Fleming, supra* at 1240–41. More specifically, the *Fleming* court determined that because the registration requirements of Megan's Law II do not serve to punish an offender but rather are designed to help ensure the safety of the public, the application of the lifetime registration provision of Megan's Law II was not, as the defendant had argued, an *ex post facto* violation under the United States Constitution. *Id.* at 1241.

The Superior Court also determined that Appellant was not entitled to withdraw his plea even though he and the trial court may have been under a mistaken impression as to the length of Appellant's registration obligation. The court based its determination on the conclusion that the registration requirements of Megan's Law are a **collateral** as opposed to a **direct** consequence of the criminal conviction. The court noted that this Court has consistently held that a defendant's lack of knowledge of collateral consequences to the entry of a guilty plea does not render a plea unknowing or involuntary. *Commonwealth v. Leidig,* 850 A.2d 743, 746 (Pa.Super.2004) (citing *Commonwealth v. Frometa,* 520 Pa. 552, 555 A.2d 92 (1989) (holding that a plea was valid even though the defendant had not been informed that, as a foreign national who had immigrated to this country, he would face deportation as a result of the plea); and *Commonwealth v. Duffey,* 536 Pa. 436, 639 A.2d 1174 (1994) (holding that a guilty plea to underage drinking could not be withdrawn based on fact defendant was unaware that his driver's license would be suspended because of his conviction, as the license suspension was a civil consequence of the conviction)). The Superior Court further opined that in *Commonwealth v. Gomer Williams,* 574 Pa. 487, 832 A.2d 962 (2003), we determined that the Megan's Law registration, notification, and counseling requirements for sexually violent offenders do not constitute criminal punishment for constitutional purposes. Accordingly, the court opined that because this Court has determined that the registration requirements of Megan's Law do not constitute criminal punishment, such registration requirements are properly character-

ized as a collateral consequence of a defendant's plea. Hence, the court concluded that for purposes of his plea, Appellant need not have been advised at all as to the length of the registration requirement, and that his misunderstanding as to the duration of the registration requirement was not a basis for withdrawing his plea. *Leidig, supra* at 748.[3]

This Court granted Appellant's petition for allowance of appeal in order to review the issue of whether the mandatory registration requirements under Megan's Law should be considered a **direct consequence** of a guilty plea or a plea of *nolo contendere,* such that the failure of a trial court to accurately advise a defendant of the duration of the Megan's Law registration period constitutes grounds for withdrawal of the plea. The issue is one of first impression for this Court. Moreover, because it involves a question of law, our scope of review is plenary and our standard of review is *de novo. Weaver v. Lancaster Newspapers, Inc.,* 592 Pa. 458, 926 A.2d 899, 902–03 (2007).

Appellant appears to acknowledge that pursuant to *Frometa, supra,* he cannot prevail unless the Megan's Law registration requirements are determined to be direct rather than collateral consequences of his plea. In *Frometa,* this Court reviewed the issue of whether counsel was ineffective under the Post Conviction Hearing Act[4] for failing to advise the defendant that a consequence of his pleading guilty to drug charges would be his deportation by the Immigration and Naturalization Service. The defendant was a Cuban national

---

3. The Superior Court also noted that decisions in other states that have passed similar sexual offenders registration statutes have determined that the registration requirements of these acts are collateral, not direct, consequences of the offender's guilty plea, and therefore no requirement exists that the offender be advised of these consequences in order for the pleas to be valid. *See State v. Ward,* 123 Wash.2d 488, 869 P.2d 1062 (1994); *Alvarez v. State,* 63 S.W.3d 578 (Tex.App.-Fort Worth 2001); *State v. Partlow,* 840 So.2d 1040 (Fla.2003); *State v. Bollig,* 232 Wis.2d 561, 605 N.W.2d 199 (2000); *Nollette v. State,* 118 Nev. 341, 46 P.3d 87 (2002).

4. 42 Pa.C.S. § 9541 *et seq.* (repealed). The Post Conviction Hearing Act was the precursor to the current Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546.

who had come to this country as part of the Marielito boatlift off the coast of Key West, Florida. We held, generally, that a defendant's lack of knowledge of the collateral consequences of pleading guilty fails to undermine the validity of the plea, and, more specifically, that "[d]eportation is but one of a host of collateral consequences of pleading guilty." *Id.* at 93.[5] We observed:

> [A] guilty plea is not a ceremony of innocence, it is an occasion where one offers a confession of guilt. Thus, ... a trial judge is not required to go to unnecessary lengths to discuss every nuance of the law regarding a defendant's waiver of his right to a jury trial in order to render a guilty plea voluntary and knowing.

*Id.* (quoting *Commonwealth v. Anthony*, 504 Pa. 551, 475 A.2d 1303, 1307–08 (1984) (quotation marks omitted)).

We further noted that among the many other examples of collateral consequences to pleas of guilty to specific crimes may be the loss of the right to vote, to enlist in the armed services, to inherit property, to own a firearm or fishing license, to practice certain professions, and to hold public office or public employment. *Id.* at 93 n. 1.

For several reasons, Appellant contends that the registration requirements under Megan's Law are different from the collateral consequences discussed in *Frometa*. First, Appellant argues that because we held in *Frometa* that **counsel** is not required to explain a collateral consequence of a guilty plea in order to afford effective assistance of counsel, the Megan's Law registration requirements cannot be considered a collateral consequence because Megan's Law requires the **sentencing court** to explain the registration requirements. *See* 42 Pa.C.S. § 9795.3 (providing, *inter alia*, that the sentencing court is required to "specifically inform" the sexual offender or sexually violent predator of the duty to register and must require the defendant to read and sign a form stating that the duty to register had been explained).

---

5. For these reasons, we held that counsel could not be determined to have been ineffective for having failed to advise the defendant of the collateral consequences of pleading guilty. *Id.* at 93–94.

■ This argument is wholly specious. First, the distinction between a direct and collateral consequence of a guilty plea has been effectively defined by this Court as the distinction between a criminal penalty and a civil requirement over which a sentencing judge has no control. *Duffey, supra* at 1176–77. That the civil requirement may be one ordered by the court is not relevant to the determination of whether the result is a direct or collateral consequence of the plea. *Id.* at 1177. *See also United States v. Romero–Vilca*, 850 F.2d 177, 179 (3d Cir.1988) (cited with approval in *Duffey* and defining a collateral consequence of a plea as "one that is not related to the length or nature of the sentence imposed on the basis of the plea.").

Here, Appellant's registration requirements under Megan's Law II do not impose a criminal penalty. Rather, although Appellant had been advised by the court that he was subject to these requirements, they are plainly a collateral consequence of his plea, substantially no different from the recognized collateral consequences of deportation[6] and driver's license suspension,[7] and in certain respects less onerous than either. In *Gomer Williams, supra*, this Court engaged in an extensive analysis to determine generally that the Megan's Law registration, notification, and counseling requirements for sexually violent predators do not constitute criminal punishment.[8] Further, in *Commonwealth v. Lee*, 594 Pa. 266, 935 A.2d 865 (2007), following additional extensive analysis, we more specifically determined that the **lifetime** registration requirements of Megan's Law II for sexually violent predators similarly do not constitute a penalty. Our analysis in these cases was based, among other things, on considerations that

6. *See Frometa, supra.*

7. *See Duffey, supra.*

8. In fact, we referred to the impact upon a sexually violent predator of the Megan's Law II registration, notification, and counseling requirements as "secondary effects" and a "potential collateral restraint" that did not rise to the level of incarceration. *Gomer Williams, supra* at 974. *See also Commonwealth v. Gaffney*, 557 Pa. 327, 733 A.2d 616, 619–22 (1999) (concluding that the registration requirements under Megan's Law I were not punitive but remedial).

the legislature specifically categorized Megan's Law as a remedial and not a punitive act; that there was lacking "the clearest proof" that the law is actually punitive, the level of proof required to rebut the legislature's clear expression of a non-punitive purpose; and that the effect of the law was not sufficiently onerous on offenders as to qualify as punishment. *See Gomer Williams, supra* at 971–82; and *Lee, supra* at 880–86.[9] The fact that Section 9795.3 provides that the sentencing court shall inform the sexual offender or sexually violent predator of the duty to register does not alter our previous analysis; nor should it be presumed that this section was not considered in *Gomer Williams* and *Lee.*

Second, we note that Section 9795.3 plainly states that **the sentencing court** is the adjudicatory body that is to inform the sexual offender or sexually violent predator of the duty to register, **not the trial court** accepting a guilty plea or a plea of *nolo contendere.* Appellant does not explain how a provision giving responsibility to the sentencing court to inform the offender regarding the registration requirements of Megan's Law logically affects any rights the offender may have regarding whether he or she had previously made a knowing and intelligent plea. Accordingly, there is no support for Appellant's first contention.

██ Appellant also argues that the registration requirements of Megan's Law are similar in nature to "special parole"

---

9. Further, in *Commonwealth v. Killinger,* 585 Pa. 92, 888 A.2d 592 (2005), we addressed the issue of whether the sanctions for non-registration of non-sexually violent predators under Megan's Law II violated the due process concerns described in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We determined that these sanctions, which treat non-registration as a felony of the third degree, did not violate the Constitution because they are imposed only after conviction based on proof beyond a reasonable doubt that the defendant had committed the predicate offense under Megan's Law II. *Killinger, supra* at 600–01. Illustrative in this holding is the fact that the Megan's Law registration requirements are not a direct consequence of a plea to the underlying offense, as they do not impose punishment. Rather, punishment occurs only after the sexual offender is found guilty following criminal prosecution, with the full range of constitutional rights, of committing a new and separate offense under Megan's Law.

under the federal criminal system. Special parole is a statutorily imposed term of supervised release **that follows and is in addition to** a term of imprisonment for certain federal drug crimes. 21 U.S.C. § 841(b). Rule 11(b)(H) of the Federal Rules of Criminal Procedure requires that a defendant entering a guilty plea or a plea of *nolo contendere* be informed by the court of "any maximum possible penalty, including imprisonment, fine, **and term of supervised release.**" Fed. R.Crim.P. 11(b)(H); emphasis added. Specifically, a defendant entering a plea must be informed that if the terms of the special parole are violated, the defendant can be returned to prison for the remainder of his or her sentence and for the full length of his or her special parole term. *See Parry v. Rosemeyer*, 64 F.3d 110, 116 (3d Cir.1995). Appellant contends that because criminal defendants subject to supervised release must be informed of the terms of this aspect of sentence and the consequences of violation, then sexual offenders must be afforded similar protections concerning the registration requirements of Megan's Law.

■ However, it is plain that there is no similarity between federal supervised release and the registration requirements of Megan's Law. The former is specifically a component of the sentencing scheme for those convicted of certain drug offenses. As such, federal supervised release is a direct consequence of a conviction, not a collateral consequence. By contrast, there is no question, pursuant to our earlier discussion, that the registration requirements of Megan's Law are a collateral consequence of conviction. Thus, Appellant's argument has absolutely no merit.[10]

10. Appellant also argues that dicta from a Wisconsin decision, *Bollig, supra*, which actually held that the sexual offender registration requirements are collateral and not direct consequences of a relevant conviction, is supportive of his argument that he should be permitted to withdraw his plea. This argument is based on Appellant's earlier contention that he is entitled to a withdrawal of his plea based on the sentencing court's duty to explain the registration requirements pursuant to 42 Pa.C.S. § 9795.3. However, we have already rejected that argument as patently meritless.

■ In *Gomer Williams* and *Lee,* we established that the registration requirements of Megan's Law are not punitive. The logical extension of these holdings is that the registration requirements of Megan's Law are collateral, not direct, consequences of conviction. To the extent that there was any confusion following those decisions that the registration requirements of Megan's Law are collateral and not direct consequences of a plea or other conviction, we settle the issue here: such requirements are collateral consequences and, as such, a defendant's lack of knowledge of these collateral consequences to his or her pleading guilty or *nolo contendere* fails to undermine the validity of the plea. *See Frometa, supra* at 93–94. Moreover, it is immaterial to our holding whether Appellant is subject to lifetime registration or only ten-year registration, an issue we need not address at this time. Because the Megan's Law registration requirements, of whatever duration, are matters collateral to Appellant's plea, the Superior Court correctly concluded that in accepting Appellant's plea, the trial court need not have advised Appellant as to the length of the registration requirement, and that any misunderstanding as to the duration of the registration requirement was not a basis for a post-sentence withdrawal of the plea. Accordingly, the order of the Superior Court is affirmed.

Justice TODD did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN and BAER join the opinion.