J-S34007-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                            :            PENNSYLVANIA
                                            :

                      v.                                :
                                            :

MATTHEW B. PUTERBAUGH           :
                                            :

              Appellant                  :       No. 1388 MDA 2019

Appeal from the PCRA Order Entered July 26, 2019
In the Court of Common Pleas of York County
Criminal Division at No(s): CP-67-CR-0004490-2014

BEFORE: PANELLA, P.J., BENDER, P.J.E., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY PANELLA, P.J.:          **FILED NOVEMBER 10, 2020**

Matthew B. Puterbaugh appeals from the order entered July 26, 2019, in the York County Court of Common Pleas, dismissing his petition challenging the application of Subchapter I of the Sexual Offender Registration and Notification Act ("SORNA II")[1] as an untimely Post Conviction Relief Act ("PCRA")[2] petition. Puterbaugh's arguments concern the application of Subchapter I's registration requirements, as well as the constitutionality of his sexually violent predator ("SVP") designation.[3] In light of the Pennsylvania

---

[1] 42 Pa.C.S.A. §§ 9799.51-9799.75 (effective Feb. 21, 2018).

[2] 42 Pa.C.S.A. §§ 9541-9546.

[3] 42 Pa.C.S.A. § 9799.58.

Supreme Court's decision in **Commonwealth v. Lacombe**, 234 A.3d 602 (Pa. 2020), and this Court's recent decision in **Commonwealth v. Smith**, ___ A.3d ___, 1011 MDA 2019, 2020 WL 5755494 (Pa. Super., filed Sept. 28, 2020), we vacate and remand for further proceedings consistent with this memorandum.

Based on the nature of this appeal, it is necessary to explain the legal history of sex offender registration statutes in Pennsylvania in conjunction with the facts and procedural history of this case. Puterbaugh's convictions stem from his role as the victim's music teacher when he initiated a relationship with her. At that time, the victim was 12 years old and Puterbaugh was in his thirties. The relationship turned sexual in nature when the victim was in the eighth grade, and continued until approximately her senior year of high school.

Puterbaugh was charged with multiple offenses based on illicit conduct from 2001 to 2007. There is some uncertainty as to which sex offender registration statute, in hindsight, was legally in effect when Puterbaugh committed some of these crimes. On May 10, 2000, what is known as Megan's Law II was signed into law. It remained in effect until at least November 24, 2004, when its successor, Megan's Law III, was signed into law.

However, the Supreme Court of Pennsylvania subsequently declared that Megan's Law III was passed in violation of the Pennsylvania Constitution's single subject rule. **See Commonwealth v. Neiman**, 84 A.3d 603 (Pa.

2013). Megan's Law III was therefore rendered void *ab initio*. **See Commonwealth v. Derhammer**, 173 A.3d 723, 725 (Pa. 2017).

From 2001 to November 2004, then, Megan's Law II was undoubtedly in effect. After November 2004, Megan's Law III was in effect, but after **Neiman**, it was to be treated as if it never legally existed. **See Derhammer**, 173 A.3d at 725. What we do know is that for *ex post facto* purposes, the predecessor to SORNA II, SORNA I,[4] had not yet been passed into law when Puterbaugh committed his crimes. **See Commonwealth v. Muniz**, 164 A.3d 1189 (Pa. 2017) (holding that a fugitive who did not appear for his 2007 sentencing could not be subjected to SORNA I registration requirements when finally sentenced in 2014).

On June 30, 2015, Puterbaugh agreed to plead guilty to one count of statutory sexual assault and one count of involuntary deviate sexual intercourse with a person less than 16 years of age ("IDSI") in exchange for concessions from the Commonwealth.[5] Per his request, he was sentenced immediately following the plea to an aggregate sentence of five to ten years'

---

[4] Act of Dec. 20, 2011, P.L. 446, No. 111, as amended, 42 Pa.C.S.A. §§ 9799.10 to 9799.41 (effective Dec. 20, 2012). In 2011, the Pennsylvania General Assembly passed SORNA I in order to comply with the Adam Walsh Child Protection and Safety Act of 2006, Pub. L. 109-248, as amended, 34 U.S.C. §§ 20911, et seq.

[5] 18 Pa.C.S.A. §§ 3122.1 and 3123(a)(7), respectively.

incarceration, to be served concurrently to his May 2015 federal child pornography sentence of 15 years.[6]

A hearing was held on January 27, 2016 to determine whether Puterbaugh should be classified as an SVP because his convictions constituted Tier III sex offenses under SORNA I. SORNA I was in effect at the time of Puterbaugh's plea and by its explicit terms, applied. **See** 42 Pa.C.S.A. § 9799.13(3) (eff. 2014) (requiring registration for individuals "who, on or after the effective date of this section," December 20, 2012, "is convicted of a sexually violent offense[.]").

The SVP assessment was conducted by Dr. Robert Stein, Ph.D., of the Sexual Offenders Assessment Board ("SOAB"). Dr. Stein concluded that Puterbaugh met the criteria to be classified as an SVP. Puterbaugh presented the testimony of his own expert to rebut Dr. Stein's assessment. On February 3, 2016, the trial court entered an order, finding Puterbaugh to be an SVP by clear and convincing evidence. Puterbaugh did not file a direct appeal.

Over a year after Puterbaugh was sentenced and deemed an SVP, the Pennsylvania Supreme Court issued **Muniz** on July 19 2017. In **Muniz**, a

---

[6] Puterbaugh was charged in two other cases in York County, which stemmed from him inappropriately touching and secretly videotaping multiple young girls without their permission, and possessing hundreds of images of child pornography on his computer. He was charged with multiple counts of intercept communications, corruption of minors, harassment, and possession of child pornography. However, the Commonwealth dismissed the two cases during the plea and sentencing in the present matter because the same offenses led to the federal conviction. **See** Order Determining Sexually Violent Predator Status, 2/3/2016, at 2.

plurality of the Pennsylvania Supreme Court held that the registration requirements of SORNA I, as applied retroactively, were punitive pursuant to the seven-factor test set forth by the United States Supreme Court in **Kennedy v. Mendoza-Martinez**, 372 U.S. 144 (1963),[7] and therefore, unconstitutional under the *ex post facto* clauses of the United States and Pennsylvania Constitutions. **See Muniz**, 164 A.3d at 1223.

Based on **Muniz**, Puterbaugh filed a *pro se* PCRA petition on September 22, 2017. In the *pro se* petition, Puterbaugh alleged that his registration requirements under SORNA were unconstitutional and violated *ex post facto* protections as established by **Muniz** because his offenses occurred prior to the enactment of SORNA. The PCRA court appointed counsel to represent Puterbaugh in his post-conviction relief pursuit.

Thereafter, on October 31, 2017, a divided, three-judge panel of this Court held in **Commonwealth v. Butler**, 173 A.3d 1212 (Pa. Super. 2017) ("**Butler I**"), that the statutory mechanism for designating a defendant as an SVP under then Section 9799.24(e)(3) was "constitutionally flawed" pursuant to the United States Supreme Court's decisions in **Alleyne v. United States**, 570 U.S. 99 (2013), and **Apprendi v. New Jersey**, 530 U.S. 466 (2000), because the statute designated the trial court as the fact-finder in all instances

---

[7] **Commonwealth v. Williams**, 832 A.2d 962, 973 (Pa. 2003) ("**Williams II**") (describing the **Mendoza-Martinez** seven-factor balancing test).

and specified "clear and convincing" evidence as the burden of proof. **Butler I**, 173 A.3d at 1218.[8]

In response to **Muniz** and **Butler**, the Pennsylvania General Assembly amended SORNA I, and enacted Acts 10 and 29 of 2018, on February 21, 2018, and June 12, 2018, respectively, which are collectively known as SORNA II. **See** Act of Feb. 21, 2018, P.L. 27, No. 10 ("Act 10"); Act of June 12, 2018, P.L. 140, No. 29 ("Act 29"). Notably, SORNA II divided sex offenders into two separate subchapters: (1) Subchapter H,[9] which applies to an offender who committed a sexually violent offense on or after December 20, 2012 (the date SORNA I became effective) for which he was convicted; and (2) Subchapter I, which applies to an individual who committed a sexually violent offense on or after April 22, 1996, but before December 20, 2010, whose period of

---

[8] The **Butler I** Court specifically opined: "[A] factual finding, such as whether a defendant has a mental abnormality or personality disorder that makes him ... likely to engage in predatory sexually violent offenses, that increases the length of registration must be found beyond a reasonable doubt by the chosen fact-finder." **Id.** Accordingly, the **Butler I** panel held "trial courts may no longer designate convicted defendants as SVPs, nor may they hold SVP hearings, until our General Assembly enacts a constitutional designation mechanism." **Id.** Furthermore, the **Butler I** Court determined lifetime registration, notification, and counseling requirements applicable to SVPs, pursuant to 42 Pa.C.S.A. § 9799.15, 9799.16, 9799.26, 9799.27, and 9799.36, constituted increased criminal punishment that were in violation of **Alleyne**/**Apprendi**.

[9] 42 Pa.C.S.A. §§ 9799.10-9799.41.

registration had not expired or whose registration requirements under a former sexual offender registration law had not expired.[10]

Moreover, a number of significant changes were made to the operation of SORNA. For the example, the provisions provided, in relevant part, that: (1) those convicted of one of the triggering offenses must register either for a period of ten years or for life, and those offenders designated as SVPs must register for life; (2) all offenders must contact the state police within three days of any change to their registration information, including changes to residence, employment, or education, but Subchapter I does not require that the offender must appear in person to satisfy this obligation; (3) an internet notification provision be operated in conjunction with the statewide registry; and (4) an SVP or lifetime reporter can petition a court to be removed from the statewide registry as long as certain requirements are met. **See** 42 Pa.C.S.A. §§ 9799.55, 9799.56, 9799.63, and 9799.59; **see also Lacombe**, 243 A.3d at 615-617.

Several days after SORNA II went into effect, a panel of this Court concluded that a PCRA petitioner could not rely on **Muniz** to establish the newly recognized constitutional right timeliness exception under 42 Pa.C.S.A. § 9545(b)(1)(iii) until the Pennsylvania Supreme Court ruled otherwise. **See Commonwealth v. Murphy**, 180 A.3d 402 (Pa. Super. 2018), *appeal denied*, 195 A.3d 559 (Pa. 2018).

---

[10] **Muniz** applied directly to Subchapter I non-SVP offenders.

During this same time, Puterbaugh filed an amended PCRA petition and a petition for writ of *habeas corpus* on March 15, 2018. In the amended petition, Puterbaugh alleged that in light of *Muniz*, neither SORNA nor Subchapter I can be retroactively applied to him, and although the claim is facially untimely under the PCRA, this Court has jurisdiction to hear the matter pursuant to 42 Pa.C.S.A. § 9545(b)(1)(iii).[11] *See* Amended Post Conviction Relief Act Petition and/or Petition for Writ of *Habeas Corpus*, 3/15/2018, at ¶ 22. Puterbaugh also claimed that Subchapter I subjected him to registration requirements anew, and therefore, this constituted a modification to his sentence. He stated the sentence modification restarted the clock for purposes of challenging his sentence, and consequently, his petition was timely filed. *Id.*, at ¶ 23.

Additionally, Puterbaugh alleged this Court has the authority to review the petition and issue a writ of *habeas corpus* to bar application of registration requirements. *Id.*, at ¶ 24. Lastly, Puterbaugh contended that his SVP designation should be vacated in light of *Butler I*. *See* Amended Post Conviction Relief Act Petition and/or Petition for Writ of Habeas Corpus, 3/15/2018, at ¶¶ 27-29. He further alleged the *Butler I* decision created a

---

[11] In support of his argument, Puterbaugh cites *Commonwealth v. Rivera-Figueroa*, 174 A.3d 674, 678 (Pa. Super. 2017) (stating *Muniz* "created a substantive rule that retroactively applies in the collateral context, because SORNA punishes a class of defendants due to their status as sex offenders and creates a significant risk of punishment that the law cannot impose."). *Rivera-Figueroa* concerned a timely filed PCRA petition.

now viable *habeas corpus* claim, which "restarted the clock" for sentencing purposes. *Id.*, at ¶ 30.

Puterbaugh filed a second, amended PCRA petition and petition for writ of *habeas corpus* on April 27, 2018, in which he largely reiterated the arguments he set forth in his first amended petition. He also claimed no valid registration schemes could be enforced against him and he did not have a duty to register as a sex offender.

On July 3, 2019, the PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss Puterbaugh's petition without a hearing. Puterbaugh did not file a response to the court's Rule 907 notice. Subsequently, on July 26, 2019, the court dismissed Puterbaugh's petition as untimely. This appeal followed.[12]

While this appeal was pending, a panel of this Court decided **Commonwealth v. Moore**, 222 A.3d 16 (Pa. Super. 2019), *vacated*, 42 WAL 2020 (Pa., filed Oct. 6, 2020). **Moore** held that the internet provision in Subchapter I, 42 Pa.C.S.A. § 9799.63, violated the *ex post facto* clause of the federal constitution. **See id.**, at 27. However, the **Moore** Court determined the internet provision was severable from the rest of the regulatory scheme. **See id.** Accordingly, the Court did not perceive any obstacles to the continued application of SORNA II absent the internet provision. **See id.**

---

[12] On August 26, 2019, the PCRA court ordered Puterbaugh to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Puterbaugh complied with the court's request on September 16, 2019. The PCRA court issued an opinion pursuant to Pa.R.A.P. 1925(a) on October 23, 2019.

Additionally, after Puterbaugh filed his appellate brief, the Pennsylvania Supreme Court issued two relevant decisions, ***Commonwealth v. Butler***, 226 A.3d 972 (Pa. 2020) ("***Butler II***") on March 26, 2020, and ***Lacombe*** on July 21, 2020.[13]

In ***Butler II***, the Supreme Court reversed this Court's decision in ***Butler I***, holding the registration, notification, and counseling requirements specific to SVPs "do not constitute criminal punishment," and therefore, "the procedure for designating individuals as SVPs under Section 9799.24(e)(3) is not subject to the requirements of ***Apprendi*** and ***Alleyne*** and remains constitutionally permissible." ***Id.*** at 976.[14]

In ***Lacombe***, the Supreme Court held that the registration requirements mandated by Subchapter I also did not constitute criminal punishment, and are non-punitive. ***See Lacombe***, at *18. Additionally, as will be discussed *infra*, the ***Lacombe*** Court explicitly declined "to find the PCRA, or any other

---

[13] Puterbaugh did file a Pa.R.A.P. 2501(b) post-submission communication, providing notice to this Court of the ***Lacombe*** decision on July 30, 2020.

[14] The ***Butler II*** Court also opined:

> SVPs are different from the non-SVP SORNA registrants at issue in ***Muniz*** due to heightened public safety concerns based on the determination SVPs have "a mental abnormality or personality disorder that makes the individual likely to engage in predatory sexually violent offenses." 42 Pa.C.S. § 9799.12.

***Butler II***, 226 A.3d at 987. We note ***Butler II*** concerned a Subchapter H SVP offender.

procedural mechanism … the exclusive method for challenging sexual offender registration statutes[.]" ***Lacombe***, at *10.

With this background before us, we now turn to Puterbaugh's arguments on appeal. First, Puterbaugh claims Subchapter I's registration requirements constituted a new or modified sentencing scheme and therefore, the court erred in finding his petition was untimely. ***See*** Appellant's Brief, at 15-20. Additionally, he asserts that because Subchapter I's registration requirements are a punitive extension of his sentence, its retroactive application violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions and, therefore, he does not have duty to register a sexual offender because no other registration schemes can be enforced against him. ***See id.***, at 20. Puterbaugh analyzed Subchapter I pursuant to the two-part test, as applied in ***Muniz***, and alleged that Subchapter I was punitive. ***See*** Appellant's Brief, at 21-43. Moreover, Puterbaugh acknowledged that the lifetime registration period was the same under both Megan's Law II/III and Subchapter I, but argued that the later statute imposed higher burdens than required under the former. ***Id.***, at 43-45.

Additionally, Puterbaugh asserted that in the event that this Court was "disinclined to find Subchapter I [was] punitive[,]" he requested that "the internet dissemination component of Subchapter I be struck from his registration requirements" in light of ***Moore***. ***See*** Appellant's Brief, at 47-48.

Secondly, in the alternative, Puterbaugh alleges that the court erred in designating him as an SVP pursuant to **Muniz** and **Butler I**. **See** Appellant's Brief, at 49-51. Lastly, he contends his SVP claim is not cognizable under the PCRA and therefore, the court erred in not granting *habeas corpus* relief. **See id.**, at 51-53.

"Our standard of review for issues arising from the denial of PCRA relief is well settled. We must determine whether the PCRA court's ruling is supported by the record and free of legal error." **Commonwealth v. Presley**, 193 A.3d 436, 442 (Pa. Super. 2018) (citation omitted).

"It is well-settled that the PCRA is intended to be the sole means of achieving post-conviction relief." **Commonwealth v. Taylor**, 65 A.3d 462, 465 (Pa. Super. 2013); **see also** 42 Pa.C.S.A. § 9542. Section 9542

> provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief. The action established in this subchapter shall be the sole means of obtaining collateral relief and encompasses all other common law and statutory remedies for the same purpose that exist when this subchapter takes effect, including *habeas corpus* and *coram nobis*. This **subchapter is not intended to** limit the availability of remedies in the trial court or on direct appeal from the judgment of sentence, to provide a means for raising issues waived in prior proceedings or to **provide relief from collateral consequences of a criminal conviction**.

42 Pa.C.S.A. § 9542 (emphasis added).

Moreover, whether a petitioner's claims are cognizable under the PCRA presents a question of law. **See Commonwealth v. Montgomery**, 181 A.3d 359, 367 (Pa. Super. 2018) (*en banc*), *appeal denied*, 190 A.3d 1134 (Pa.

2018). Accordingly, our standard of review is *de novo*, and our scope of review is plenary. *Id.* "Issues that are cognizable under the PCRA must be raised in a timely PCRA petition and cannot be raised [otherwise]." *Taylor*, 65 A.3d 466.

In dismissing Puterbaugh's argument, the PCRA court found that his petition was not timely filed, and therefore, it did not have jurisdiction to review the matter.[15] *See* Order Denying PCRA, 7/26/2019, at unnumbered 1. Moreover, in its Rule 1925(a) opinion, the court stated the enactment of SORNA II did not modify Puterbaugh's sentence, referring to this Court's decision in *Commonwealth v. Kirwan*, 221 A.3d 196, 200 (Pa. Super. 2019) for the notion that "registration requirements do not constitute 'sentences' for PCRA eligibility purposes."[16] Trial Court's 1925(a) Statement, 10/23/2019, at unnumbered 2.

---

[15] As noted by the PCRA court, Puterbaugh's judgment of sentence was final on March 4, 2016, 30 days after this Court affirmed the judgment of sentence and Puterbaugh declined to file a direct appeal. *See* 42 Pa.C.S.A. § 9545(b)(3); Pa.R.A.P. 903(a). Therefore, he had until March 6, 2017 to file a timely PCRA petition, as March 4th fell on a Saturday. Puterbaugh filed the petition at issue on September 22, 2017.

[16] In *Kirwan*, this Court noted the PCRA restricts relief to those petitioners "currently serving a sentence of imprisonment, probation or parole for the crime[.]" *Kirwan*, 221 A.3d at 200, *quoting* 42 Pa.C.S.A. § 9543(a)(1)(i). The Court concluded that because the petitioner was not currently imprisoned, on probation or on parole, he was ineligible for PCRA relief. *See Kirwan*, 221 A.3d at 200. Furthermore, the *Kirwan* Court stated:

> [T]he fact that the Supreme Court in *Muniz* declared that SORNA's registration requirements constituted punishment, does not affect our decision. While the *Muniz* Court found the

We are constrained to disagree with the PCRA court's conclusion based on the fact that **Lacombe** and **Smith** are controlling in this matter.[17] In **Lacombe**, the defendant was convicted for multiple sexual offense crimes, including IDSI, in 1997. He was not found to be an SVP, but was required to comply with the then-applicable version of Megan's Law for a period of ten years upon release from prison due to his IDSI conviction. **See** Lacombe, 234 A.3d at 606. Accordingly, when he was released from prison in 2005, his period of registration would have ended in 2015. **See id.** However, with the enactment of SORNA I, the defendant was designated as a Tier III offender and ordered to comply with lifetime registration mandates. **See id.**

Lacombe filed a petition to terminate his sexual offender registration requirements in 2018 after **Muniz** was decided. The trial court granted his petition. The Commonwealth appealed the court's order directly to the

registration requirements of SORNA were "akin to probation" for purposes of determining whether the requirements were punitive, **Muniz**, **supra**, 164 A.3d at 1213, the Court did not determine the registration requirements constitute a "sentence of ... probation" for purposes of PCRA eligibility. The language of the statute clearly states that only the sanctions of imprisonment, probation and parole are "sentences" for eligibility purposes.

**Kirwan**, 221 A.3d at 200.

[17] "[T]he general rule in Pennsylvania is to apply the law in effect at the time of the appellate decision." **Commonwealth v. Housman**, 986 A.2d 822, 840 (Pa. 2009).

Supreme Court.[18] The Commonwealth argued that Subchapter I was not punitive, but if it was, then any challenge had to be raised in a timely PCRA petition and the defendant's Subchapter I challenge was facially untimely for purposes of the PCRA and therefore, the court lacked jurisdiction to provide relief. *See id.*

The *Lacombe* Court first opined:

> This Court has not yet required that sexual offender registration statutes be challenged through the PCRA or some other procedural mechanism. Indeed, we have consistently decided cases regarding sexual offender registration statutes that were challenged via different types of filings. *See Muniz*, *supra* (successful challenge to constitutionality of SORNA via direct appeal), *Commonwealth v. Martinez*, 637 Pa. 208, 147 A.3d 517, 523 (Pa. 2016) (successful challenge to increase of registration term through "Petition to Enforce Plea Agreement or for a Writ of Habeas Corpus" where PCRA petition would have been untimely), *A.S. v. Pa. State Police*, 636 Pa. 403, 143 A.3d 896, 903 n.7 (Pa. 2016) (successful challenge to registration term through mandamus action against PSP), *Williams II*, *supra* (unsuccessful challenge to constitutionality of Megan's Law II through "Motion for Extraordinary Relief" and "Motion for Relief"). **Our approach in this regard takes into account the fact that frequent changes to sexual offender registration statutes, along with more onerous requirements and retroactive application, complicate registrants' ability to challenge new requirements imposed years after their sentences become final.**

---

[18] *See* 42 Pa.C.S.A. §722(7) ("The Supreme Court shall have exclusive jurisdiction of appeals from final orders ... [in m]atters where the court of common pleas has held invalid as repugnant to the Constitution, treaties or laws of the United States, or to the Constitution of this Commonwealth, any treaty or law of the United States or any provision of the Constitution of, or of any statute of, this Commonwealth, or any provision of any home rule charter.").

This is especially so under the PCRA as many registrants, [the defendant] included, would be ineligible for relief on timeliness grounds. *See* 42 Pa.C.S. §9545(b)(1) (PCRA petition must be filed within one year of judgment of sentence becoming final unless exception applies). Other registrants may be ineligible because their sentence has expired while their registration requirements continue. *See* 42 Pa.C.S. §9543(a)(1) (PCRA petitioner must be serving sentence to be eligible for relief). Both situations arise from the fact that the registration period does not begin until registrants are released from prison, which may be well after their sentence has become final or may signal the completion of their sentence. Accordingly, **we decline to find the PCRA, or any other procedural mechanism, is the exclusive method for challenging sexual offender registration statutes** and we thus conclude the trial court had jurisdiction to consider [the defendant]'s "Petition to Terminate His Sexual Offender Registration Requirements."

*Lacombe*, 234 A.3d at 617-618 (emphasis added).

The *LaCombe* Court then applied the two-part inquiry employed in *Muniz*, and first analyzed whether the General Assembly enacted Subchapter I to punish sex offenders. In reviewing the legislature's intention, the Court determined the General Assembly's purpose was to create a non-punitive civil regulatory scheme. *See Lacombe*, 234 A.3d at 618. Next, the Supreme Court considered the *Mendoza-Martinez* factors to determine whether registration requirements of Subchapter I were punitive. *See Lacombe*, 234 A.3d at 618-626. The Court concluded that the punitive factors did not outweigh the non-punitive ones,[19] and held Subchapter I did not constitute criminal punishment. *See id.*, at 626-627.

_____

[19] In its review, the Court did find that Subchapter I's internet registration provisions were akin to public shaming, and therefore, punitive in effect. *See Lacombe*, 234 A.3d at 622-623.

- 16 -

In **Smith**, the appellant pleaded guilty in 2013 to two counts of indecent assault, which were committed between 2002 and 2008, while he was a juvenile. The court sentenced and designated him a lifetime registrant under SORNA I. He did not file a direct appeal but did file a motion for removal from registry in 2018. The court treated his motion as a PCRA petition, and determined it was untimely filed. The court stated that the appellant's substantive claims implicated the legality of his sentence, which were cognizable issues under the PCRA. As such, the court found that because the petition was untimely, it was without jurisdiction to review the claims.

A panel of this Court disagreed, explaining, in relevant part:

> [O]ur Supreme Court recently examined the registration requirements mandated by Subchapter I of SORNA II and found them to be non-punitive. **Lacombe**, 2020 Pa. LEXIS 3826, [WL] at *18. **Non-punitive, administrative requirements are merely collateral consequences of a criminal conviction**. **Commonwealth v. Leidig**, 598 Pa. 211, 956 A.2d 399, 406 (Pa. 2008). Thus, a **challenge to the requirements mandated by Subchapter I of SORNA II pertains to a collateral consequence of one's criminal sentence and does not fall within the purview of the PCRA**. 42 Pa.C.S. § 9542.
>
> In addition, the **Lacombe** Court expressly declined "to find the PCRA, or any other procedural mechanism . . . the exclusive method for challenging sexual offender registration statutes[.]" **Lacombe**, 2020 Pa. LEXIS 3826, [WL] at *10. According to the Court, **an offender's requirements change frequently and may be retroactively applicable**. *See id.* Thus, **the strict jurisdictional requirements of the PCRA render it unsuitable, because many registrants will be ineligible for relief on timeliness grounds or because their criminal sentence has expired while their registration requirements continue**. *See id.*

***Smith***, ___ A.3d ___, 1011 MDA 2019, at \*\*5-6, 2020 WL 5755494 (Pa. Super., filed Sept. 28, 2020) (emphasis added).

The ***Smith*** Court concluded that the appellant's motion for removal was not an untimely PCRA petition and that his substantive challenges regarding the application of Subchapter I's lifetime registration requirements were not cognizable under the PCRA, and therefore, not subject to its time-bar. The Court also declined to address the appellant's substantive claims at the time of its decision. ***See id.***, at \*6.[20]

Turning to the present matter, in accordance with ***Lacombe*** and ***Smith***, we conclude the PCRA court erred in concluding that it lacked jurisdiction to consider Puterbaugh's claims based on the fact that the petition was untimely filed. Pursuant to these decisions, an untimely PCRA petition does not impinge on the court's jurisdiction to review the merits of a sex offender registration requirements argument. We recognize that by holding Subchapter I is non-punitive, the ***Lacombe*** ruling will most likely be outcome-determinative as to most, if not all, of Puterbaugh's underlying claims. Nevertheless, Puterbaugh's challenge to the requirements mandated by Subchapter I of SORNA II pertained to the collateral consequences of his criminal sentence and did not

---

[20] ***See also Commonwealth v. Duncan***, ___ A.3d ___, No. 2020 PA Super 201, 2020 WL 4781359 (Pa. Super., filed Aug. 18, 2020) (holding that where appellant finished serving his sentence and was not eligible for PCRA relief, the court was not required to treat the filing as a PCRA petition in light of ***Lacombe***).

fall within the purview of the PCRA. **See Smith**.[21] Accordingly, we vacate the PCRA court's order dismissing Puterbaugh's petition as untimely filed and remand the present matter to the trial court for further proceedings consistent with this memorandum.

---

[21] It merits mention that as part of his argument, Puterbaugh claims that the ruling in **Moore** concerning the internet registration requirements is applicable. As noted above, in **Lacombe**, the Supreme Court determined that while the internet registration requirement was punitive, the punitive factors did not outweigh the non-punitive ones. Nevertheless, the Supreme Court held the petition for allowance of appeal in **Moore** pending the disposition of **Lacombe**. **See Commonwealth v. Moore**, 42 WAL 2020 (Pa., filed May 12, 2020). On October 6, 2020, the Supreme Court issued a *per curiam* order in **Moore**, granting the petition. **See Commonwealth v. Moore**, 42 WAL 2020 (Pa., filed Oct. 6, 2020). In the same order, the Court vacated this Court's decision and remanded the matter, instructing this Court to apply **Lacombe**.

We also recognize that pending before the Pennsylvania Supreme Court is **Commonwealth v. Bres**, 222 A.3d 1124 (Pa. 2020) (table). In **Bres**, the defendant's petition for allowance of appeal was granted on the following:

> Did the Superior Court err in ruling that the [lower court] correctly treated the Petitioner's Amended Post-Conviction Relief Act Petition and/or Petition for Writ of Habeas Corpus, which challenged the constitutionality of Subchapter I of the Pennsylvania Sex Offender Registration and Notification Act (which was recently enacted into law on February 21, 2018), as an untimely petition filed pursuant to the Post-Conviction Relief Act?

**Bres**, 222 A.3d 1124 (Pa. 2020) (table).

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 11/10/2020