J-S46008-24
J-S46009-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PARIS LUNDY | : | |
| | : | |
| Appellant | : | No. 338 WDA 2024 |

Appeal from the Judgment of Sentence Entered February 14, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0006400-2023

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| PARIS LUNDY | : | |
| | : | |
| Appellant | : | No. 339 WDA 2024 |

Appeal from the Judgment of Sentence Entered February 14, 2024
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0007073-2022

BEFORE:  LAZARUS, P.J., BOWES, J., and KING, J.

MEMORANDUM BY LAZARUS, P.J.:          **FILED: January 17, 2025**

Paris Lundy appeals from the judgments of sentence, entered in the Court of Common Pleas of Allegheny County, after he pled guilty, at two

separate docket numbers,[1] to one count each of cruelty to animals,[2] simple

assault,[3] and resisting arrest.[4]  After our review, we affirm.

At the guilty plea hearing, the Commonwealth set forth the factual

summary underlying the charges to which Lundy pled guilty as follows:

> Starting with [docket number] 6400[ of ]2023, had this case proceeded to trial the Commonwealth would have called Lieutenant Craig Sullivan, [] with the [University of Pittsburgh Medical Center ("UPMC")] Police Department to testify that on August 10, 2023[,] staff was attempting to get [Lundy,] who had been discharged to leave the facility at UPMC Mercy located in Allegheny County.  [Lundy] was refusing, screaming at staff, telling—calling them stupid bitches.  Your Honor, as staff were attempting to restrain [Lundy], UPMC Police Officer Turcan[] was head-butted by [Lundy].  Officer Turcan's head hit the door in the bay area in the emergency department.  Lieutenant Sullivan would have testified he advised [Lundy] he was under arrest and [Lundy] continued resisting.  While [Lundy] was eventually placed in custody, Officer Turcan fell backwards and lost consciousness. With that, Your Honor, the Commonwealth would have rested.
>
> At [docket number] 7073 of 2022, had this case proceeded to trial, the Commonwealth would have called Officer Blake Steininger, [] of the Pittsburgh Borough Police Department[,] to testify that on or about September 11th of 2022 at 5:55 p.m.[,] he was dispatched to 1621 St. Patrick Street in Pittsburgh, located in Allegheny County, for a dog yelping in the area for about two to three minutes in what appeared to be pain.  Officer Steininger would have testified that[,] upon arriving to 1621 St. Patrick Street[,] he observed [Lundy] open the front door holding a leash

---

[1] Lundy has complied with the dictates of **Commonwealth v. Walker**, 185 A.3d 969 (Pa. 2018), by filing a separate notice of appeal for each docket number.  We have consolidated the appeals, *sua sponte*.  **See** Pa.R.A.P. 513.

[2] 18 Pa.C.S.A. § 5533(a).

[3] **Id.** at § 2702(a)(1).

[4] **Id.** at § 5104.

to a husky. Officer Steininger would have testified that he observed the husky to be covered in fresh blood on his paw, mouth, side area and had a completely swollen left eye covered in blood. Officer Steininger would have testified that he observed [Lundy] pull the dog backwards aggressively and kick the dog in the dog's face. Officer Steininger also would have testified that he observed the dog to have exposed ribs and the dog had a strong odor.

The Commonwealth would have called Dr. [Ari Samson] to testify regarding her observations made during the forensic examination of the husky. Dr. Samson would have testified that the husky had fractures in his left mandible, three of his teeth[,] and toenail of the left hind foot. The husky also had soft tissue swelling over the left side of his skull and neck, cardiovascular shock, hypothermia[,] and was underweight.

The Commonwealth would have entered into evidence pictures of the husky at the time of the forensic examination, body-worn camera of the forensic examination[,] and body-worn camera of the Pittsburgh Borough Police Department documenting their arrival on September 11th, Your Honor. With that the Commonwealth would have rested.

N.T. Guilty Plea/Sentencing, 2/14/24, at 20-22. Upon questioning by the court, Lundy affirmed that he was pleading guilty because he was, in fact, guilty. *See id.* at 23.

On February 14, 2024, the trial court sentenced Lundy to three concurrent terms of 2 years' probation. Lundy filed post-sentence motions seeking to withdraw his guilty pleas. Plea counsel also sought permission to withdraw, as Lundy had raised a claim of their ineffectiveness. On February 23, 2024, the trial court denied Lundy's motions to withdraw his pleas but granted counsel's motions to withdraw. The court appointed the Office of Conflict Counsel to represent Lundy on appeal.

- 3 -

Lundy filed timely notices of appeal and court-ordered Pa.R.A.P. 1925(b) concise statements of errors complained of on appeal. On appeal, Lundy claims that the trial court abused its discretion by denying his post-sentence motions to withdraw his guilty plea without a hearing.

Our review of an order denying a post-sentence motion to withdraw a guilty plea is guided by the following principles:

> [P]ost-sentence motions for withdrawal are subject to higher scrutiny since courts strive to discourage entry of guilty pleas as sentence-testing devices. A defendant must demonstrate that manifest injustice would result if the court were to deny his post-sentence motion to withdraw a guilty plea. Manifest injustice may be established if the plea was not tendered knowingly, intelligently, and voluntarily. In determining whether a plea is valid, the court must examine the totality of circumstances surrounding the plea. A deficient plea does not *per se* establish prejudice on the order of manifest injustice.

***Commonwealth v. Broaden***, 980 A.3d 124, 129 (Pa. Super. 2009) (citations omitted).

In assessing the validity of a guilty plea, we are guided by the following:

> A valid guilty plea must be knowingly, voluntarily[,] and intelligently entered. ***Commonwealth v. Pollard***, 832 A.2d 517, 522 (Pa. Super. 2003). The Pennsylvania Rules of Criminal Procedure mandate that pleas be taken in open court, and require the court to conduct an on-the-record colloquy to ascertain whether a defendant is aware of his rights and the consequences of his plea. ***Commonwealth v. Hodges***, 789 A.2d 764 (Pa. Super. 2002), citing Pa.R.Crim.P. 590. Specifically, the court must affirmatively demonstrate the defendant understands: (1) the nature of the charges to which he is pleading guilty; (2) the factual basis for the plea; (3) his right to trial by jury; (4) the presumption of innocence; (5) the permissible ranges of sentences and fines possible; and (6) that the court is not bound by the terms of the agreement unless the court accepts the agreement. ***Commonwealth v. G. Watson***, 835 A.2d 786 (Pa.

- 4 -

Super. 2003). This Court will evaluate the adequacy of the plea colloquy and the voluntariness of the resulting plea by examining the totality of the circumstances surrounding the entry of that plea. ***Commonwealth v. Muhammad***, 794 A.2d 378, 383-[]84 (Pa. Super. 2002).

***Commonwealth v. Kelley***, 136 A.3d 1007, 1013 (Pa. Super. 2016) (citation omitted).

Generally, a defendant's lack of knowledge of the collateral consequences of the entry of a guilty plea does not undermine the validity of the plea. ***Commonwealth v. Abraham***, 62 A.3d 343, 350 (Pa. 2012). In ***Commonwealth v. Frometa***, 555 A.2d 92, 93 (Pa. 1989), abrogated in part by ***Padilla v. Kentucky***, 559 U.S. 356 (2010), our Supreme Court held that when a defendant is not made aware of a given consequence of his or her guilty plea, relief must be based upon a determination of whether the consequence at issue was a "direct" or "collateral" consequence of the plea, with only the former warranting a remedy. ***See Frometa***, 555 A.2d at 93 (noting that "defense counsel need only advise a criminal defendant of the direct consequences of pleading guilty.") (citation omitted). The distinction between a direct and collateral consequence of a plea is best described as "the distinction between a criminal penalty and a civil requirement over which a sentencing judge has no control." ***Commonwealth v. Leidig***, 956 A.2d 399, 404 (Pa. 2008).

Whether to permit a defendant to withdraw a guilty plea is a decision committed to the sound discretion of the trial court. ***See Commonwealth v. Hart***, 174 A.3d 660, 664 (Pa. Super. 2017) (applying abuse of discretion

- 5 -

standard to withdrawal of plea after a sentence has been imposed). Judicial

discretion:

> imports the exercise of judgment, wisdom[,] and skill so as to reach a dispassionate conclusion, and discretionary power can only exist within the framework of the law, and is not exercised for the purpose of giving effect to the will of the judges. Discretion must be exercised on the foundation of reason, as opposed to prejudice, personal motivations, caprice[,] or arbitrary action. Discretion is abused when the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias[,] or ill[-]will.

*Commonwealth v. Shaffer*, 712 A.2d 749, 751 (Pa. 1998) (citation

omitted).

Here, Lundy argues that his pleas were not knowingly, voluntarily, and

intelligently entered where he did not understand the impact they would have

on his custody matter pending in the Allegheny Family Court. Specifically,

Lundy notes that 23 Pa.C.S.A. § 5328(a)(2.2) requires a custody court to give

"substantial weighted consideration" to "violent or assaultive behavior

committed by a party" in determining the best interests of the child. Brief of

Appellant, at 12. Lundy claims he should have been advised of the impact his

conviction might have on his custody case and, because he was not, his pleas

were involuntary.

Lundy acknowledges that Pennsylvania courts differentiate between

direct and collateral consequences of a plea but argues that "both may provide

a basis for allowing a defendant to withdraw a plea if punitive in nature." *Id.*

at 13, citing *Hart*, *supra* (holding trial court erred in denying motion to withdraw plea where defendant not advised of SORNA I registration requirements, which had been held to be punitive in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017)). Applying the *Mendoza-Martinez*[5] factors to section 5328(a)(2.2), Lundy concludes that the statute's effect is punitive and, therefore, his ignorance of the statute's requirement to consider violent or assaultive behavior rendered his pleas involuntary. We disagree.

In determining whether a consequence is punitive in nature, courts apply a two-pronged test. First, a court must inquire as to whether the legislature intended to impose punishment. *Leidig*, 850 A.2d at 747 n.4. If the court concludes that it did not, it then applies the second prong by considering the *Mendoza-Martinez* factors to determine "whether the statutory scheme is so punitive in purpose or effect as to negate the legislature's non-punitive intent." *Id.* Here, we agree with the Commonwealth that Lundy's "bald assertion" that section 5328(a)(2.2) is punitive "is belied by the unambiguous legislative intent of the statute and its effect, which are both quintessentially non-punitive." Brief of Appellee, at 15.

_____

[5] *Kennedy v. Mendoza-Martinez*, 372 U.S. 144 (1963) (setting forth framework to determine whether effect of civil law is punitive in effect). The *Mendoza-Martinez* factors are as follows: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned. *See id.* at 168–69.

It is beyond cavil that, in child custody cases, the paramount concern is for the best interests of the child, "based on a consideration of all factors that legitimately affect the child's physical, intellectual, moral[,] and spiritual well[-]being." ***R.M.G., Jr. v. F.M.G.***, 986 A.2d 1234 (Pa. Super. 2009) (citation omitted). Under section 5328, violent or assaultive behavior—**whether resulting in a conviction or not**—is but one of numerous factors to be considered by the custody court in making its determination.[6] As the

_____

[6] Section 5328 provides the following non-exhaustive list of factors to be considered by a court in awarding custody:

(1) Which party is more likely to ensure the safety of the child.

(2) The present and past abuse committed by a party or member of the party's household, which may include past or current protection from abuse or sexual violence protection orders where there has been a finding of abuse.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(2.2) Violent or assaultive behavior committed by a party.

(2.3) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party if contact is consistent with the safety needs of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life[,] and community life, except if changes are necessary to protect the safety of the child or a party.

*(Footnote Continued Next Page)*

_____

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's developmental stage, maturity[,] and judgment.

(8) The attempts of a party to turn the child against the other party, except in cases of abuse where reasonable safety measures are necessary to protect the safety of the child.  A party's reasonable concerns for the safety of the child and the party's reasonable efforts to protect the child shall not be considered attempts to turn the child against the other party.  A child's deficient or negative relationship with a party shall not be presumed to be caused by the other party.

(9) Which party is more likely to maintain a loving, stable, consistent[,] and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational[,] and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.  A party's effort to protect a child or self from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.
*(Footnote Continued Next Page)*

Commonwealth correctly notes, all of the section 5328(a)(2.2) factors "are clearly in place for child protection, not retribution against parents or guardians." Brief of Appellee, at 19. Accordingly, Lundy is unable to demonstrate that the purpose or effect of section 5328(a)(2.2) is punitive in nature and, consequently, his claim fails.

Judgments of sentence affirmed.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

1/17/2025

---

23 Pa.C.S.A. § 5328(a)(1)-(16).