**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Cody MILLER, Appellant.**

Superior Court of Pennsylvania.

Submitted Sept. 3, 2013.

Filed Nov. 18, 2013.

Thomas P. Sundmaker, Stroudsburg, for appellant.

Elmer D. Christine, Jr., Assistant District Attorney, Stroudsburg, for Commonwealth, appellee.

BEFORE: ALLEN, OTT, and COLVILLE *, JJ.

OPINION BY ALLEN, J.:

Cody Miller ("Appellant") appeals from the order entered December 14, 2012, subjecting him to the sex offender registration requirements set forth in Subchapter H of

* Retired Senior Judge assigned to the Superior

the Sentencing Code, 42 Pa.C.S.A. § 9799.10 *et seq.*, effective December 20, 2012. For the reasons that follow, we affirm.

The trial court summarized the procedural history as follows:

On May 3, 2011, [Appellant] pled guilty to one count of Indecent Assault by Forcible Compulsion, 18 Pa.C.S.A. Section 3126(a)(2), a misdemeanor of the first degree. On August 15, 2011, Appellant was sentenced to nine to thirty-six months in the Monroe County Correctional Facility. He was further ordered to comply with the registration requirements of the version of Megan's Law that was in effect at the time. Under that version of the law, [Appellant] was required to register for ten years.

[Appellant] did not appeal the judgment of sentence. Similarly, [Appellant] did not seek reconsideration of or otherwise challenge the provision in the sentencing order requiring him to register as a sex offender.

[At the time of his sentencing in 2011, Appellant was subject to the registration requirements set forth in 42 Pa.C.S.A. § 9791–9795.4. That version of Megan's Law subsequently expired and was recodified at 42 Pa.C.S.A. §§ 9799.10–9799.41 effective December 20, 2012. The amended version of Megan's Law retroactively imposed new registration requirements on sex offenders such as Appellant, and required the trial court to notify the affected sex offenders of their new registration requirements.]

On December 14, 2012, [the trial court] convened a sex offender notification hearing ... to advise [Appellant] and other Monroe County sex offenders of their registration and reporting duties under the current version of Megan's

Court.

Law and to give offenders required written notice of their obligations. The order [Appellant] is attempting to challenge in this appeal was issued at the conclusion of the hearing.

Trial Court Opinion, 3/14/13, at 2–3.

Appellant did not file any motions before the trial court challenging the December 14, 2012 order. Rather, on January 10, 2013, Appellant filed a notice of appeal to this Court. Both Appellant and the trial court have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

I. WAS THE ORDER ISSUED BY THE HONORABLE TRIAL COURT PURSUANT TO Pa. R.CRIM.P. 720 A FINAL APPEALABLE ORDER PURSUANT TO Pa.R.A.P. 341?

II. DOES THE [SEX OFFENDER REGISTRATION AND NOTIFICATION ACT (SORNA)] REQUIREMENT THAT PERSONS CONVICTED OF OFFENSES COMMITTED PRIOR TO SORNA'S EFFECTIVE DATE REGISTER AS SEX OFFENDERS POSE ADDITIONAL PUNISHMENT IN VIOLATION OF THE *EX POST FACTO* CLAUSES OF THE PENNSYLVANIA CONSTITUTION AND THE UNITED STATES CONSTITUTION?

III. DOES THE SORNA VIOLATE THE SEPARATION OF POWERS DOCTRINE BY SEIZING FOR THE LEGISLATURE POWER TO PROSCRIBE PRACTICES AND PROCEDURE(S) IN THE COURTS AND THEIR JUDICIAL EMPLOYEES AND OFFICERS?

Appellant's Brief at 5.

Preliminarily, we note that the December 14, 2012 order which Appellant is challenging subjected Appellant to the sex offender registration obligations set forth in Subchapter H of the Sentencing Code, currently codified at 42 Pa.C.S.A. §§ 9799.10–9799.41, entitled "Registration of Sexual Offenders" and generally referred to as "Megan's Law." We will briefly discuss the history of the law.

In 1995, the General Assembly amended the Sentencing Code by adding Subchapter H, "Registration of Sexual Offenders," then codified at 42 Pa.C.S.A §§ 9791–9799 ("Megan's Law I"). "The law was subsequently reenacted and amended numerous times. Megan's Law I, was to a significant extent ruled unconstitutional in *Commonwealth v. Donald Williams*, 557 Pa. 285, 733 A.2d 593 (1999). The General Assembly subsequently enacted Megan's Law II, whose constitutionality [the Pennsylvania Supreme Court] substantially upheld in *Commonwealth v. Gomer Williams*, 574 Pa. 487, 832 A.2d 962 (2003)." *Commonwealth v. Leidig*, 598 Pa. 211, 956 A.2d 399, 400, n. 1 (2008). In *Gomer Williams*, while largely upholding Megan's Law II, the Supreme Court held that certain penalties imposed for noncompliance were unconstitutionally punitive, but severable. *Gomer Williams*, 832 A.2d at 985–986. "In the Act of November 24, 2004, P.L. 1243 (known as Megan's Law III), the General Assembly addressed several matters, including that portion of Megan's Law II held to be unconstitutional in *Gomer Williams*. In the Act of November 29, 2006, P.L. 1567 (effective January 1, 2007), the General Assembly amended the legislation once again." *Leidig*, 956 A.2d at 400, n. 1. Most recently, on December 20, 2011, the General Assembly amended Megan's Law, effective December 20, 2012. We refer to this current, amended version of Megan's Law as "Megan's Law IV."

On December 14, 2012, the trial court in this case convened a hearing to notify of-

fenders, including Appellant, who were subject to the retroactive provisions of Megan's Law IV, of their new registration requirements. In its Pa.R.A.P. 1925(a) opinion, the trial court detailed the circumstances surrounding the December 14, 2012 hearing as follows:

After the [Megan's Law IV] amendments were adopted, trial court, county correctional facilities, state, and county probation offices, and state agencies ... wrestled with a host of practical, logistical, and financial issues pertaining to implementation of Megan's Law IV. One significant issue was when and how to notify offenders subject to the retroactive application of Megan's Law IV of their obligations under the law, and thereafter register and process them in accordance with ... the law.[1] Courts became directly involved in these issues because the General Assembly included language in Megan's Law IV that purports to direct courts and their chief probation officers to perform specific legislatively assigned administrative tasks.

[The Monroe County courts] opted for a procedure centered on a hearing at which offenders under the supervision of our probation office or the jurisdiction of [the trial court] would be advised of their registration and reporting obligations under Megan's Law IV and given a written Megan's Law notification form. [T]he notification hearing was held on December 14, 2012. Ample notice of the hearing was given to all offenders and defense counsel including [Appellant] and his attorney.[2]

At the beginning of the hearing, [the trial court] advised all offenders, as a group, of their reporting and registration requirements under Megan's Law IV and the consequences of non-compliance. Some of the offenders, such as [Appellant] were already subject to registration requirements under Megan's Law III, but others were not. [The trial court] informed [Appellant] and others who were already registered of their increased registration periods and changed obligations [and] advised all offenders of the time periods within which they had to register or re-register under the new law.

After speaking to all convened, the [trial court] conducted a general colloquy to ensure that the offenders heard and understood what [the trial court] had told them. [The trial court] then handed out written Megan's Law notifi-

1. *See* 42 Pa.C.S.A. § 9799.20 of Megan's Law IV:

In order to implement the provisions of section 9799.19 [of Megan's law IV] (relating to initial registration), as appropriate, the Pennsylvania State Police, the court having jurisdiction over the sexual offender, the chief juvenile probation officer of the court and the appropriate official of the Pennsylvania Board of Probation and Parole, county office of probation and parole, the Department of Public Welfare or a State or county correctional institution shall:

(1) Inform the individual required to register of the individual's duties under this subchapter.
(2) Require the individual to read and sign a form stating that the duty to register

has been explained and that the individual understands the registration requirement.
(3) Collect the information required under section 9799.16(b) and (c) (relating to registry) and forward the information to the Pennsylvania State Police for inclusion in the registry as set forth in this subchapter.

2. The trial court entered an order directing Appellant to appear for a hearing on December 14, 2012, to be notified of the new sex offender registration and reporting requirements under Megan's Law IV. *See* Order, 11/6/12, at 1.

cation forms and adjourned for a sufficient period of time to allow each offender ample time to discuss his notification form with his attorney.

Following the break, [the trial court] called cases individually. Each offender was informed of his duty to comply with Megan's Law, his sex offender classification or Tier, the length of his registration period, the frequency with which he is required to report to confirm and update registration information, and the penalties for non-compliance. In addition, each offender was advised of the outside date by which he was statutorily required to register under Megan's Law IV. [The trial court] also went over each offender's notification form which, in turn, confirmed the information, dates, and times [the trial court] had orally given the offender. An order was entered in each individual case directing the offender to comply with the requirements of Megan's Law IV.

[S]everal offenders expressed an intent to challenge the registration requirements of Megan's Law IV. [The trial court] invited [all the offenders present] to file an appropriate motion and appear on January 8, 2013 for a hearing at which [the trial court] planned to hear all such motions. [The trial court] even indicated that if a challenger filed a good-faith motion on or before the date he was scheduled to register, and then appeared for the hearing, [the trial court] would not ... enforce the registration and reporting requirements until the challenge had been resolved. In addition, both before and after, [the trial court] spoke individually with each offender, [the trial court] permitted defense counsel to place on the record their concerns regarding or potential challenges to the registration requirements.

[Appellant] was present at the hearing and represented by counsel.... [Appellant's] attorney told [the trial court] that [Appellant] had read and understood his Megan's Law notification form, but would not sign it on advice of counsel.

After the hearing, several offenders filed motions challenging Megan's Law IV, [the] hearing orders, or both....

Cases that could not be resolved were called for hearing on January 8, 2013, as scheduled. At the conclusion of the hearing, [the trial court] gave the offenders and the Commonwealth the opportunity to brief relevant issues and return for a second hearing. In order to facilitate a fruitful discussion at the second hearing, [the trial court] later issued an order directing the parties to be prepared to discuss a non-exhaustive list of designated issues and the clear line of appellate cases which have addressed and rejected similar challenges to previous iterations of Pennsylvania's Megan's Law.

Curiously, [Appellant] did not file a motion challenging either Megan's Law IV or [the trial court] Order directing him to comply with that law. Instead, on January 10, 2013, [Appellant] filed this appeal.

Trial Court Opinion, 3/3/13, at 6–9 (footnotes omitted).

As explained above, following the December 14, 2012 hearing, the trial court entered an order requiring Appellant to comply with the new Megan's Law IV registration and notification requirements, and provided Appellant with a notification form to sign. At the hearing, Appellant's counsel advised the trial court that Appellant would not sign the notification form. N.T., 12/14/12, at 29. Appellant made no other objections or challenges on the record to the Megan's Law IV requirements.

▆▆▆ The trial court notified Appellant of his new registration requirements, then informed Appellant that he, along with the other offenders present, could raise challenges to the registration requirements by filing a motion with the trial court and appearing at a hearing on January 8, 2013. *Id.* at 21–22, 24. Appellant did not file a motion or appear at the hearing. Instead, on January 10, 2012, Appellant filed a direct appeal, and raised constitutional claims for the first time.[3] Specifically, Appellant asserts that Megan's Law IV is punitive, and that the retroactive application of Megan's Law IV violates the *ex post facto* clauses of Article 1, § 10 of the United States Constitution and Article 1, § 17 of the Pennsylvania Constitution. Additionally, Appellant claims that Megan's Law IV violates the separation of powers doctrine. Upon careful review, we conclude that Appellant's *ex post facto* claim, which was raised for the first time in his Pa.R.A.P.1925(b) statement after he filed direct appeal, is waived. Appellant's separation of powers claim, which was raised for the first time in his appellate brief before this Court, is also waived. Because we find that Appellant has waived these claims, we need not address Appellant's first issue, in which he asserts that the December 14, 2012 order was final.

▆▆▆ It is well settled that issues not raised before the trial court cannot be advanced for the first time on appeal. Pa. R.A.P. 302(a).

> Issue preservation is foundational to proper appellate review.... By requiring that an issue be considered waived if raised for the first time on appeal, our

courts ensure that the trial court that initially hears a dispute has had an opportunity to consider the issue. This jurisprudential mandate is also grounded upon the principle that a trial court ... must be given the opportunity to correct its errors as early as possible. Related thereto, we have explained in detail the importance of this preservation requirement as it advances the orderly and efficient use of our judicial resources. Finally, concepts of fairness and expense to the parties are implicated as well.

*In re F.C. III*, 607 Pa. 45, 2 A.3d 1201, 1212 (2010) (citations omitted) (finding appellant's constitutional claims waived where he failed to raise them before the lower court, depriving that tribunal of the opportunity to consider and rule upon them); *see also Commonwealth v. Hawkins*, 295 Pa.Super. 429, 441 A.2d 1308, 1312, n. 6 (1982) (even issues of constitutional dimension cannot be raised for the first time on appeal pursuant to Pa.R.A.P. 302(a)). Appellant's failure to raise his constitutional claims before the trial court impedes appellate review, and his failure to develop the record before the trial court interferes with our ability to conduct a meaningful evaluation of the issues raised in Appellant's brief.

With regard to his *ex post facto* challenge, Appellant argues that the new requirements of Megan's Law IV are unconstitutionally punitive such that its retroactive application is impermissible. Appellant's Brief at 21–38. Appellant, however, does not set forth in his brief

---

**3.** While the record indicates that Appellant did not notify the Attorney General of his intent to challenge the constitutionality of the statute, we find that no such notice was required in this case because, pursuant to Pa. R.A.P. 521(a), a party has the duty to notify the Attorney General of a constitutional challenge to a statute only "in any matter in an appellate court to which the Commonwealth or any officer thereof, acting in his official capacity, is not a party...." *Commonwealth v. Balog*, 448 Pa.Super. 480, 672 A.2d 319, 320 (1996).

what his new registration requirements under Megan's Law IV are, in comparison to his requirements under the previously applicable version of Megan's Law, and what other, if any, additional requirements Appellant is now subject to under the amended statute. Such questions should have been developed with the trial court, providing us with a factual record upon which to evaluate Appellant's claims. We decline to scrutinize the entirety of subchapter H of the Sentencing Code, line by line, to determine how it differs from the prior version of Megan's Law, and to ascertain how the changes may impact Appellant.

In support of his separation of powers challenge to the constitutionality of Megan's Law IV, Appellant claims that Megan's Law IV requires the Courts of Common Pleas, as well as state, county, and local probation offices to administer and enforce registration and notification requirements. Appellant argues that this imposition by the legislature on the judicial branch of an affirmative duty, violates the separation of powers doctrine. Appellant contends that it unconstitutionally allows the legislature to impose on the courts a mandate to supervise, enforce, and implement a legislative enactment. *See* Appellant's Brief at 38–42. *See Commonwealth v. Mockaitis*, 575 Pa. 5, 834 A.2d 488 (Pa. 2003) ("The General Assembly cannot constitutionally impose upon the judicial branch powers and obligations exclusively reserved to the legislative or executive branch; nor can it in essence deputize judicial employees to perform duties more properly reserved to another of the coequal branches of government."). Appellant's separation of powers claim was not raised in Appellant's Pa.R.A.P. 1925(b) statement of errors complained of on appeal, and appears for the first time in his

appellate brief. Moreover, in his appellate brief, Appellant does not direct this Court to the specific provisions of Megan's Law IV that he seeks to have declared unconstitutional. Therefore, this claim is also waived. *See Commonwealth v. Hansley*, 24 A.3d 410, 415 (Pa.Super.2011) ("issues not raised in a Rule 1925(b) statement will be deemed waived for review").

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judge COLVILLE files a Concurring Opinion.

## CONCURRING OPINION BY COLVILLE, Judge:

While I agree that Appellant is not entitled to relief due to his failure to preserve his substantive issues for our review, I believe we should briefly address Appellant's first issue, as it implicates our jurisdiction.

Pa.R.A.P. 341(b)(1) provides, in relevant part, that "[a] final order is any order that[ ] disposes of all claims and of all parties." As explained by the Majority, at the hearing to notify Appellant of the new registration requirements under Megan's Law IV,[1] the court established a procedure whereby any objections to the trial court's order requiring compliance with the registration requirements could be raised by filing a motion which would then be disposed of at a subsequent hearing. Because Appellant did not raise any objections to the trial court pursuant to the prescribed procedure, the December 14, 2012, order, is final as to Appellant as it disposed of all of Appellant's claims. The court was not required to do anything further in order to enforce the December 14, 2012, order against Appellant. Thus,

---

1. 42 Pa.C.S.A. § 9799.10, *et seq.*

we have jurisdiction over this appeal. *See* 42 Pa.C.S.A. § 742.