J-A08036-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MANDY M. MILANI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEVI J. KALKA | : | |
| | : | |
| Appellant | : | No. 1091 WDA 2021 |

Appeal from the Order Entered August 12, 2021
In the Court of Common Pleas of Erie County Civil Division at No(s):
16419-2021

BEFORE:  BENDER, P.J.E., LAZARUS, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:                **FILED: APRIL 19, 2022**

Levi J. Kalka (Appellant) appeals *pro se* from the order entered in Erie County Court of Common Pleas granting the petition filed by his former paramour, Mandy M. Milani (Appellee), under the Protection from Abuse (PFA) Act,[1] following a full hearing.  On appeal, Appellant argues the trial court failed to notify him of certain rights and consequences under 23 Pa.C.S. § 6107 of the PFA Act (related to PFA hearings).  Additionally, Appellant raises several constitutional claims under the Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.  For the below reasons, we affirm.

On August 1, 2021, at approximately 1:00 a.m., Appellee arrived at Appellant's apartment in Erie County, Pennsylvania.  N.T. Final PFA H'rg, 8/12/21, at 11.  After a verbal argument Appellee threw a glass of water at

_____

[1] 23 Pa.C.S. §§ 6101-6122.

Appellant and he proceeded to physically attack and threaten to kill Appellee. *Id.* at 12-13.  Around 2:00 a.m., Appellee fled the apartment and contacted the police.  *Id.* at 9, 13-15.

Two days after the incident, Appellee filed a PFA petition, alleging various acts of physical and emotional abuse by Appellant.  A temporary PFA order was granted that same day.

On August 12, 2021, the trial court held a final PFA hearing where both Appellant and Appellee appeared and testified.[2]  Appellee described the August 1st incident as follows.  At the time, Appellee and Appellant had been dating for "four to five months" N.T. Final PFA H'rg at 9.  When Appellee arrived at Appellant's apartment around 1:00 a.m., Appellee stated he "had already been drinking" and "continue[d] to drink" after her arrival.  *Id.* at 11-12.  While watching television, Appellant made derogatory statements about Appellee and her family.  *Id.* at 10-12.  Appellee became angry and threw a glass of water in Appellant's face.  *Id.* at 12.  Appellant "immediately attacked" Appellee.  *Id.*  Appellee described the ensuing altercation:

> He charged at me and pinned me in the corner of the couch. He had both of his legs on my knees and he would not let go of my wrists and he was nose-to-nose screaming in my face, spit[t]ing in my face.  He then picked me up and slammed me on the coffee table, which is where I got the brises on my back[.] From there he picked me up and got me on the ground [and got] on top of me, and that's when it was getting worse.  And he would not let go of me.

---

[2] Appellant was acting *pro se* while Appellee was represented by counsel.

*Id.*

Appellant then said, "I should just kill you[,]" while Appellee was "begging him" to stop and "get off" of her. N.T. PFA Final H'rg at 13. Despite Appellee's pleas, Appellant continued his attack. Appellee testified:

> [Appellant] still wouldn't let go of my wrists. He was squeezing tighter and tighter. And he let go of my left wrist, and his fist went back. And the second he let go of my left wrist, I hit him in the face to get away from him. And when that happened, it escalated and got even worse. And that's when he literally picked me up, slammed me against the corner of the wall and like scraped down my face, which is where all the scratches came from. And I as bleeding some. And then he lifted his right knee into my gut and called me a fucking cunt. And said, you're never going to get away from me and wrapped his arms around [ ] my neck. And I had to pry his hands from my neck. And I was lucky enough to do that and I got out of there.

*Id.*

After escaping Appellant's apartment, Appellee drove to a convenience store and called 911. N.T. PFA Final H'rg at 15. Appellant called her at 4:06 a.m., while she was with responding officers. *Id.* at 18. The officers "asked if they could pick up the phone." *Id.* Appellee handed one of the officers her phone and the officer spoke to Appellant "for a good six to eight minutes, if not[,] maybe ten." *Id.* The officer told Appellant to "stop contacting" Appellee. *Id.* After ending the conversation with Appellant, the officer told Appellee, "it appears [Appellant] is extremely intoxicated and . . . said he had no recollection of" the attack. *Id.* at 16. Appellee indicated that Appellant continued to contact her through text messages, sending "one after another after another" and "the texts got worse." *Id.* at 18-19. For example,

Appellant texted, "[Y]ou left your keys to my apartment, don't come back[.] I will shoot on sight[.]" *Id.* at 19.

Appellee stated she had "never been more emotionally abused in [her] life[,]" and was "afraid for [her] physical safety[.]" N.T. Final PFA H'rg at 17. Appellee provided photographic evidence of her injuries and text messages from Appellant, that were admitted into evidence. *Id.* at 18.

Appellant then took the stand and stated that he did not drink any alcohol before Appellee arrived at his apartment on the day of the incident. N.T. Final PFA H'rg at 25. Appellant testified he was upset because he had completed school work for Appellee, and that he believed "she should really be doing her own assignments[.]" *Id.* at 21. Appellant stated Appellee was the one who made an insulting comment about his ethnicity. *Id.* Appellant stated he then made a comment about Appellee's daughter, to which she threw a drink in his face. *Id.* at 22. Appellant averred that he attempted to restrain Appellee for his own protection and that she hit him in the face several times, which caused him to bleed. *Id.* at 22-23. Appellant stated that he then released Appellee and she left. *Id.* at 22. Appellant admitted that after the incident, he did text Appellee "some stupid things." *Id.* He also stated he was "not sure" if he was responsible for Appellee's injuries. *Id.* at 26. The trial court allowed Appellant to submit evidence of text messages and his injuries over Appellee's objection. *Id.* at 26-27.

At the conclusion of the PFA hearing, the trial court granted Appellee's petition and issued an PFA order against Appellant for a period of three years.

N.T. Final PFA H'rg, at 29. The trial court specifically found Appellee was "in reasonable fear of imminent, serious, bodily injury." *Id.*

On September 10, 2021, Appellant filed a timely[3] *pro se* notice of appeal. He also timely complied with the trial court's order to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).

Appellant raises the following two claims on appeal:

1. Were Appellant's right under 23 [Pa.]C.S. § 6107 violated where the [trial] court failed to advise [him] of the right to be represented by counsel[, a]nd of the possibility that any firearm, other weapon, or ammunition owned[,] and any firearm license possessed may be ordered temporarily relinquished, and of the options for relinquishment of a firearm pursuant to this chapter[?]

2. Were Appellant's rights under the Fifth, Eighth, and Fourteenth Amendments to the United States [Constitution] violated[?]

Appellant's Brief at 2 (unpaginated).

We review PFA orders under the following standard of review:

---

[3] The trial court stated "Appellant did not timely serve" the court with his notice of appeal until after the court "discovered on its own" that Appellant had filed a notice of appeal. Trial Ct. Op. 11/3/21, at 1, fn. 1; *see also* Order, 9/16/21. Appellant thereafter "served [the t]rial [c]ourt" with a copy of the notice on September 21, 2021, 11 days after the deadline. Trial Ct. Op. 11/3/21, at 1, fn. 1.

Appellant had 30 days from the date the trial court granted the final PFA order, or until September 11, 2021, to file a notice of appeal. *See* Pa.R.A.P. 903(a). The docket reflects Appellant filed his notice of appeal on September 10, 2021. Trial Ct. Docket No. 16419-2021, at 2 (unpaginated); Appellant's Notice of Appeal, 9/10/21 (wherein Appellant and timestamp both indicate the filing date as September 10, 2021). Therefore, Appellant's notice of appeal was timely filed.

We review the propriety of a PFA order for an abuse of discretion or an error of law. We have described this standard as "not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused."

*E.A.M. v. A.M.D.*, 173 A.3d 313, 316 (Pa. Super. 2017) (citations and some quotation marks omitted).

We initially note that while "this Court is willing to construe liberally materials filed by a *pro se* litigant, *pro se* status generally confers no special benefit upon an appellant." *Commonwealth v. Lyons*, 833 A.2d 245, 251-52 (Pa. Super. 2003) (citation omitted). Furthermore, he is not entitled to have this Court advocate on his behalf. *Commonwealth v. Rivera*, 685 A.2d 1011, 1013 (Pa. Super. 1996).

Appellant first argues that his rights under Section 6107 of the PFA Act were violated when the court asked counsel for Appellee to "inform" Appellant about the "general procedure and the rights and options that everybody has, without informing" Appellant "of his right to be represented by counsel, on the record." Appellant's Brief at 5 (some quotation marks omitted). Appellant asserts:

Given the critical significance of the required notifications and the fact that the defendant had a right to be represented by counsel prior to the ruling of the final order, a defendant must be notified of any rights in which he could have requested a continuance in order to obtain legal counsel for the hearing. Additionally, during the trial criminal charges were claimed to have been made against [Appellant], but these charges were not filed until after the conclusion of the final [PFA] order hearing[, and had he] been aware of the criminal charges (which were subsequently dismissed following testimonies by both parties at a criminal trial) he would

- 6 -

have had the opportunity to ask for a continuance of the civil trial until the criminal proceedings had concluded.

Appellant's Brief at 6.

Section 6107 provides, in relevant part:

**(a)** *General rule.* – Within ten business days of the filing of a petition under this chapter, a hearing shall be held before the court, at which the plaintiff must prove the allegation of abuse by a preponderance of the evidence. **The court shall, at the time the defendant is given notice of the hearing, advise the defendant of the right to be represented by counsel**, of the right to present evidence, of the right to compel attendance of witnesses, of the method by which witnesses may be compelled, **of the possibility that any firearm, other weapon or ammunition owned and any firearm license possessed may be ordered temporarily relinquished**, of the options for relinquishment of a firearm pursuant to this chapter, of the possibility that Federal or State law may prohibit the possession of firearms, including an explanation of 18 U.S.C. § 922(g)(8) (relating to unlawful acts) and 18 Pa.C.S. § 6105 (relating to persons not to possess, use, manufacture, control, sell or transfer firearms), and that any protection order granted by a court may be considered in any subsequent proceedings under this title. . . .

\* \* \*

**(c)** *Continued hearings.--*

**(1)** If a hearing under subsection (a) is continued and no temporary order is issued, the court may make ex parte temporary orders under subsection (b) as it deems necessary.

**(2)** If a hearing is scheduled to take place within three business days after a defendant is served under section 6106 (relating to commencement of proceedings), the court shall grant a continuance until the three-business-day period has elapsed, if requested by the defendant.

**(3)** The court shall notify the defendant of the right to such continuance.

23 Pa.C.S. § 6107 (emphases added).

Before addressing the merits of Appellant's first argument, we must determine if he has properly preserved this issue on appeal. As noted above, the court ordered Appellant to file a Rule 1925(b) concise statement. Appellant complied and raised the following issues in his statement:

[1. Eighth and Fourteenth] Amendment – Cruel and Unusual Punishment/Deprivation of Property

In reference to the excessive fines clause of the [Eighth] Amendment of the United States Constitution, it is believed that [A]ppellant's property was excessively seized. This is in relation to his firearms being seized. It should be noted that [A]ppellee's counsel attempted to reach an agreement with [A]ppellant regarding the PFA before initial proceedings in which he stated that a request would be made to allow [A]ppellant to keep his firearms as well as requesting a reduction for the term of the PFA. Instead, following the proceedings, a maximum term of [three] years was given, and [A]ppellant's firearms were seized.

[2.] Mistake of Law - *mens rea* for abuse

It is believed that the [trial] court did not properly establish within the reasoning of the given final order the *mens rea* for abuse which, if properly established, would have eliminated the consideration that [A]ppellant acted in self defense. [A]ppellant's testimony included explanations of attempting to restrain [A]ppellee in an act to prevent injury, given that [A]ppellee had attacked [A]ppellant first (evidenced by [A]ppellee's statement in requesting the temporary order and [A]ppellee's testimony during the final order hearing). [A]ppellant did not attempt to injure [A]ppellee and there is no evidence that excessive (non-minor) injuries had occurred[.] Additionally, [A]ppellee indeed injured [A]ppellant in the event, and this is evidenced by image entries during the final order hearing.

[3.] Mistake of Fact – restrain for protection

In the aforementioned paragraph, it was noted that intent for abuse was not established by the [trial] court, and it is believed that intent for abuse did not exist. Similarly, it is believed that the court erred in establishing a distinction between restrain for protection and restraint as an attack. It has been noted that in

no instance did [A]ppellant restrain [A]ppellee in a manner which he was preventing her from leaving. In fact, after [A]ppellee had stopped attacking [A]ppellant, he let her go and she was free to gather her belongings, change her clothes, and leave willingly.

[4.] Perjury – [A]ppellee's remarks intentionally swearing a false oath

[A]ppellee claimed that she was at [A]ppellant's apartment within a few days before the incident. [A]ppellant objected to this notion and the [trial] court asked [A]ppellee if she was telling the truth. [A]ppellee affirmed that she was telling the truth. It is confirmed through text messages that [A]ppellee was knowingly and intentionally lying about this fact.

Appellant's *Pro Se* Statement of Matters Complained of on Appeal, 10/7/21.

Upon reviewing Appellant's concise statement, it is evident that Appellant did not raise a claim that his rights under 23 Pa.C.S. § 6107 were violated in either his Rule 1925(b) statement or before the trial court. As such, he has not preserved this argument for appellate review. *See* Pa.R.A.P. 1925(b)(4)(vii) ("Issues not included in the Statement . . . are waived."); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). *See also Commonwealth v. Bonnett*, 239 A.3d 1096, 1106 (Pa. Super. 2020) (stating that "any issue not raised in a Rule 1925(b) statement will be deemed waived for appellate review.") *appeal denied*, 250 A.3d 468 (Pa. 2021). Therefore, we conclude Appellant's first argument is waived.

Even if Appellant had preserved this claim, it would be deemed meritless. Under Subsection 6107(a), the trial court must inform Appellant of his right to have counsel and the possibility of relinquishing firearms and firearms licenses "at the time [he] is given notice of the hearing[.]" 23 Pa.C.S.

§ 6107(a). Here, on August 3, 2021, the trial court served Appellant with a "Notice of Hearing and Order[,]" which explicitly informed Appellant the PFA order may "direct[ him] to relinquish any firearm, other weapon, ammunition, or any firearm license[,]" and of his "right to have a lawyer represent" him at the hearing, but that the court was not required to appoint a lawyer for him. Notice of Hearing and Order, 8/3/21, at 1-2 (unpaginated) (some capitalization omitted). Thus, the court complied with the requirements of Section 6107 and Appellant was put notice and advised of his rights.

Furthermore, his complaint about the lack of notice regarding a continuance would be without merit because the hearing was not held within three business days of the August 3rd notice; rather, it was held nine days later on August 12th. *See* 23 Pa.C.S. § 6107(c)(2). Therefore, a continuance would not be necessary pursuant to Subsection 6107(c).

Next, we turn to Appellant's second claim, in which he alleges his constitutional rights under the Fifth, Eighth, and Fourteenth Amendments were violated because he was punished by the court's final PFA order without being informed of his right to counsel and his right to a continuance. Appellant's Brief at 7. His argument on this issue consists of one paragraph, in which he baldly asserts:

> A defendant, criminal or civil, has the right to due process (especially when it considers depriving a person of property without due process of law). This right is enforced upon the states and guaranteed by the Fourteenth Amendment's Due Process Clause ("the sentencing process as well as the trial itself must satisfy the requirements of the Due Process Clause").

*Id.*

We briefly note that constitutional challenges are a "question of law for which our standard of review is *de novo* and our scope of review is plenary." ***Kaur v. Singh***, 259 A.3d 505, 509 (Pa. Super. 2021) (citation omitted).

Appellant's second argument fails for numerous reasons. First, like his first issue, Appellant did not raise any allegation concerning his Fifth Amendment rights in his 1925(b) statement or before the trial court. ***See*** Pa.R.A.P. 1925(b)(4)(vii); Pa.R.A.P. 302(a). As such, that part of his argument was not properly preserved.

Second, while Appellant did raise claims pertaining to the Eighth and Fourteenth Amendments in his Rule 1925(b) statement, he did not raise these claims before the trial court. ***See Commonwealth v. Miller***, 80 A.3d 806, 811 (Pa. Super. 2013) (holding constitutional challenge was waived where raised for the first time in the Rule 1925(b) statement). As such, they are waived. ***See*** Pa.R.A.P. 302(a).

Furthermore, even if these assertions were properly preserved for review, Appellant's argument in his appellate brief amounts to a mere assertion that he has a "right to due process [which is] guaranteed by the Fourteenth Amendment[.]" Appellant's Brief at 7. Pursuant to Rule of Appellate Procedure 2119(a), the argument section of an appellate brief must provide "discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). As Appellant fails to develop any meaningful argument regarding his constitutional concerns, we conclude Appellant's claim would be

- 11 -

deemed waived, as it is wholly inadequate to present an issue for our review.

*See Butler v. Illes*, 747 A.2d 943, 944 (Pa. Super. 2000) ("When issues are not properly raised and developed in briefs, when briefs are wholly inadequate to present specific issues for review, a court will not consider the merits thereof.") (citation omitted). Accordingly, Appellant has failed to properly preserve his second argument.

In sum, Appellant has not established that the court erred in granting the PFA petition. Therefore, we affirm the order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/19/2022