J-A12034-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| RODNEY HOWARD, JR. | : | |
| | : | |
| Appellant | : | No. 620 WDA 2021 |

Appeal from the Judgment of Sentence Entered May 14, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s):  CP-02-CR-0013050-2014

BEFORE:     MURRAY, J., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY McCAFFERY, J.:                    **FILED: JULY 29, 2022**

Rodney Howard, Jr. (Appellant), appeals from the judgment of sentence entered in the Allegheny County Court of Common Pleas, following his jury conviction of first-degree murder.[1]  On September 11, 2020, a prior panel of this Court remanded for an evidentiary hearing on Appellant's claim of after-discovered evidence — that an eyewitness received leniency in his own criminal matter in exchange for cooperation in Appellant's case.[2]  The trial

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(a).

[2] ***Commonwealth v. Howard***, 1714 WDA 2018 (unpub. memo.) (Pa. Super. Sept. 11, 2020).  We note this Court also previously heard a Commonwealth appeal in this case, from a suppression ruling.  ***Commonwealth v. Howard***, 1771 WDA 2015 (unpub. memo.) (Pa. Super. June 21, 2017).

court: conducted the evidentiary hearing on May 14, 2021; found the eyewitness did not, in fact, receive a plea deal or favorable treatment; and thus reimposed the judgment of sentence of life imprisonment without parole. Appellant now argues: (1) the trial court erred in denying relief on his claim of a *Brady* violation[3] and denying a new trial based on his after-discovered evidence claim; and (2) his life-without-parole sentence is unconstitutional as cruel and unusual punishment. We affirm.

## I. Facts & Procedural History

Appellant was charged with the January 20, 2014, fatal shooting of Hosea Davis (the Victim) in Pittsburgh, Pennsylvania. Daniel Ray knew and lived near Appellant, and was an eyewitness to the shooting. A jury trial commenced on July 23, 2018. Ray testified to the following:

> [He went] to Rapidan Way to purchase drugs. After consuming some alcohol, Ray purchased a bag of heroin from Victim. Upon receiving the heroin, Ray turned his back to Victim. Approximately twenty seconds later, Ray heard gunshots. [N.T. Jury Trial, 7/23-26/18, at 190, 198-200.[4]]
>
> Ray immediately dove into nearby bushes. From this position, Ray saw Appellant, wearing a gray, Champion sweatsuit with the hood pulled tightly over his head, Nike "Foams" sneakers, and glasses. Appellant also wore a mask that covered part of his face, from his nose to his chin. Ray recognized Appellant from the neighborhood, and Appellant had worn the same sweatsuit earlier that week. Appellant was carrying an assault rifle, which he

---

[3] *See Brady v. Maryland*, 373 U.S.83 (1963).

[4] We have combined the transcript citations in each paragraph and have removed the honorific "Mr." from Ray's name.

pointed at Victim. **Ray watched as Appellant fired additional shots at Victim, who was lying on the ground.** After the shooting, Appellant turned and walked through the gate to his residence. [N.T. Jury Trial at 183-84, 202-05, 237.]

The day after the shooting, detectives interviewed Ray and obtained his statement. During the interview, detectives showed Ray a photo array of eight men. Without hesitating, Ray [identified Appellant] as the shooter. [N.T. Jury Trial at 278-80, 302.]

*Howard*, 1714 WDA 2018 at 2 (emphasis added).

On direct examination by the Commonwealth, Ray disclosed the following: at the time of the shooting, he had a drug addiction.[5] N.T. Jury Trial at 187. In June of 2014 — approximately six months after the shooting — Ray was arrested for selling heroin, and those charges against him were still pending. *See id.* at 186, 252. When asked if the prosecution or law enforcement offered him "any deals or promises in exchange for [his] testimony" against Appellant, or whether Ray had "any expectations" he would "receive a favor for [his own] pending charges," Ray replied in the negative. *Id.* at 186-87. Ray replied similarly to the same questions asked by defense counsel on cross-examination. *Id.* at 252, 253. Additionally, Ray disclosed, on both direct and cross, that he had a prior criminal record: (1) in 2000, he pleaded guilty to providing false identification to law enforcement, theft by

---

[5] At the time of trial, Ray was "four years clean." N.T. Jury Trial at 187.

deception, and forgery; and (2) in 2005, he pleaded guilty to false identification to law enforcement and theft.[6] *Id.* at 185-86, 250-51.

The jury found Appellant guilty of first-degree murder. On July 31, 2018, the trial court sentenced Appellant to life imprisonment without parole.

Appellant filed a timely notice of appeal. Then, on March 18, 2019, he filed the underlying motion for a new trial based on after-discovered evidence. He asserted: (1) Ray entered a guilty plea in his own criminal case and was sentenced in July of 2018; and (2) in March of 2019, Appellant's counsel learned from Ray's attorney that Ray **had** received a favorable sentence due to his cooperation in Appellant's case.

On appeal before this Court, the Commonwealth agreed this case should be remanded for an evidentiary hearing. This Court concluded Appellant had "present[ed] a colorable claim of after-discovered evidence warranting further review by the trial court." *Howard*, 1714 WDA 2018 at 13. The panel thus vacated the judgment of sentence and remanded solely for an evidentiary hearing on Appellant's after-discovered evidence claim.[7] If a new trial was not required, the trial court was to re-impose the judgment of sentence originally entered.

---

[6] On cross-examination, Ray also stated he had a robbery conviction. N.T. Jury Trial at 250.

[7] The panel denied relief on Appellant's remaining claims, which challenged the admission of hearsay statements.

## II. After-Discovered Evidence Hearing

The trial court conducted the evidentiary hearing on May 4, 2021.[8] First, Appellant's trial counsel, James Wymard, Esquire,[9] testified he was aware Ray had a pending criminal case, which was postponed every time Appellant's case was postponed, and Ray's case was postponed approximately 19 times. N.T. PCRA Hearing, 5/14/21, at 8.[10] Attorney Wymard believed "there had to be" a deal between Ray and the Commonwealth, but when he asked the Commonwealth, he "was told there was no deal." *Id.* at 9.

Assistant Public Defender (APD) Jamie Schuman, Esquire, briefly represented Appellant post-trial. It was she who filed a notice of appeal and then the underlying motion for a new trial based on after-discovered evidence. *See* Appellant's Notice of Appeal, 12/4/18,; N.T. PCRA Hearing at 50. According to Attorney Schuman, Ray's attorney, APD Leslie Perlow, Esquire,

_____

[8] The jury trial and July 31, 2018, sentencing were conducted by the Honorable Donna Jo McDaniel. The case was then reassigned to the Honorable Jill Rangos, who presided over the after-discovered evidence hearing.

[9] At the after-discovered evidence hearing, Appellant was represented by William McKinney, Esquire. In this appeal, he is represented by Joseph Rewis, Esquire.

[10] The hearing was not part of any Post Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546, proceeding. Instead, Appellant sought relief in a post-sentence motion under Pa.R.Crim. 720(C) ("A post-sentence motion for a new trial on the ground of after-discovered evidence must be filed in writing promptly after such discovery."). Nevertheless, for ease of review, we cite to the title of the hearing that appears on the cover page of this transcript.

told her Ray "had gotten a deal," which she understood to mean received "a favorable deal in his case." *Id.* at 52. Attorney Schuman also considered "the totality of the circumstances," including the fact that Appellant had asked her to research this issue, four or five years had passed between Ray's arrest and his sentencing, and Ray received a sentence of only one year of non-reporting probation. *See id.* at 50-52. Attorney Schuman ultimately withdrew from representing Appellant, however, due to a conflict of interest, as she and Ray's attorney were both assistant public defenders. *Id.* at 49-50.

Next, Ray's attorney, APD Perlow testified and denied Ray had any plea bargain with the Commonwealth. N.T. PCRA Hearing at 27, 34. In connection with being a witness in Appellant's trial, Ray was "threatened" and placed in the witness protection program. *Id.* at 25-26. The Commonwealth wanted Ray to testify at Appellant's trial first, but also wanted to have Ray's plea hearing "[at] the same time because of the fact [Ray was] threatened" and because "it was somewhat of an ordeal to bring [Ray] down," as he was in witness protection. *Id.* at 26-27. Ray's case was postponed more than 20 times. *Id.* at 25. Judge Cashman, who presided over Ray's case, was aware of these reasons for the postponements — including that Appellant "was a cooperating witness in a homicide case." *Id.* at 28-29. In testifying there was no plea deal between Ray and the Commonwealth, Attorney Perlow also stated it was her general practice to write, at the top of the plea colloquy, the

terms of any plea bargain, but in Ray's case, she only wrote that Ray was pleading guilty to Counts 2 and 3. *Id.* at 30.

Finally, Attorney Perlow explained that Ray pleaded guilty in July of 2018 to two counts, which included possession of a controlled substance with intent to deliver, and the Commonwealth withdrew an additional two counts.[11] N.T. PCRA Hearing at 30-31. Ray's guideline range sentence was 21 to 27 months' incarceration, and the mitigated range was 15 months' incarceration. *Id.* at 31. However, Ray received a sentence of probation. *Id.* At this juncture, we note Assistant District Attorney (ADA) Alicia Werner, Esquire — who prosecuted Appellant's case at trial — testified at this same hearing that she previously "had a lot of [drug] cases" with Attorney Perlow before Judge Cashman, and it was "very common" for Judge Cashman to "give probation" even though the sentencing guidelines called for "state time." *Id.* at 62-63.

Attorney Perlow (Ray's attorney) was asked whether she told Attorney Schuman (Appellant's appeal attorney) that Ray "received a deal in exchange for his cooperation." N.T. PCRA Hearing at 34. Attorney Perlow explained what she told Attorney Schuman: "[I]t worked out really well for [Ray] after he testified[,] but there wasn't . . . a plea bargain," and, "[H]e got a good deal on the sentence and it all worked out well for him. I did not have a plea

_____

[11] The hearing transcript does not indicate what Ray's remaining charges were. *See* N.T. PCRA Hearing at 30-31.

agreement . . . but he was given consideration by the judge because of his cooperation and I think because the case was very old." *Id.* at 34.

Finally, ADA Werner, who prosecuted Appellant's case at trial, denied she ever offered Ray a "cooperation agreement or plea agreement," or even discussed Ray's case with him. N.T. PCRA Hearing at 65, 67.

At the conclusion of the May 14, 2021, hearing, the trial court found Appellant failed to establish after-discovered evidence necessitating a new trial. N.T. PCRA Hearing at 82. The court credited the testimony "that there was no deal" between Ray and the Commonwealth. *Id.* Furthermore, the court found that any evidence would be used solely to impeach Ray's credibility, and Appellant's trial counsel had already impeached the witness's credibility at trial. *Id.* at 85. Accordingly, the court re-imposed the sentence of life without parole. *Id.* at 85. Appellant filed a timely notice of appeal.[12]

---

[12] On May 27, 2021, the trial court directed Appellant to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal within 21 days, or by June 17th. Five days **after** this deadline, Appellant filed a motion to "reinstate time to file" the Rule 1925(b) statement. Despite the untimeliness of this motion, the trial court issued an order on July 6th, granting Appellant an additional 90 days, or until October 4th. On October 6th, Appellant again filed an untimely motion to "reinstate time to file" the statement. The court granted relief, directed Appellant to file a statement immediately, and Appellant finally complied.

Generally, the untimely filing of a court-ordered Rule 1925(b) statement results in waiver of all issues on appeal. *Commonwealth v. Burton*, 973 A.2d 428, 430 (Pa. 2009), *citing Commonwealth v. Castillo*, 888 A.2d 775 (Pa. 2005). However, the Pennsylvania Supreme Court has held such untimely filing is *per se* ineffectiveness on the part of counsel, for which a
*(Footnote Continued Next Page)*

## III. Statement of Questions Involved

Appellant presents the following issues for our review:

I. Whether [Appellant's] rights under the due process clause of the Fourth Amendment to the United States Constitution and the due process clause of the Pennsylvania Constitution were violated when the Commonwealth failed to correct false testimony from Ray that it knew, or should have known, was false when Ray testified at trial that he was not receiving any benefit, nor did he expect any benefit, for his testimony and cooperation with the Commonwealth.

II. Whether the trial court erred in the denial of a new trial based upon after-discovered evidence that the sole eyewitness, Ray, received leniency on his criminal charges that were pending at the time of [Appellant's] trial in exchange for his cooperation with the Commonwealth and his trial testimony.

III. Whether [Appellant's] rights under the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution and the Pennsylvania Constitution were violated with the imposition of the sentence of life without parole.

Appellant's Brief at 3.

## IV. *Brady* Violation

In his first issue, Appellant avers the Commonwealth's "failure to correct false evidence and provide . . . material evidence upon request [violated his] due process rights" and amounted to a **Brady** violation. Appellant's Brief at 8-9. Appellant reasons: the only evidence connecting him to the murder of

---

defendant is entitled to prompt relief. **Burton**, 973 A.2d at 433, 439. Accordingly, we may overlook the untimely filing. Furthermore, as the trial court has addressed the merits of Appellant's claims in an opinion, we need not remand.

the Victim was Ray's identification of him as an eyewitness; Ray's credibility

was thus "critical;" and "the existence of any deal or any lenience was highly

relevant." *Id.* at 10-11. We determine this issue is waived.

Our Supreme Court has explained:

> [T]o establish a *Brady* violation, a defendant has the burden to prove that: (1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the prosecution has suppressed the evidence, either willfully or inadvertently; and (3) the evidence was material, meaning that prejudice must have ensued.

*Commonwealth v. Bagnall*, 235 A.3d 1075, 1086 (Pa. 2020) (citations

omitted).

In Appellant's March 18, 2019, motion for a new trial, the only legal

basis cited for relief was Pa.R.Crim.P. 720(C).[13] Appellant made no mention

of *Brady* or its Pennsylvania progeny, nor the elements of a *Brady* test. *See*

*Bagnall*, 235 A.3d at 1086. Appellant did not allege the Commonwealth

withheld any evidence, and instead claimed, contrary to a *Brady* claim: "the

evidence that Ray testified in exchange for lenience in his own case **could not**

**have been obtained before trial**, as Ray was not sentenced until after

[Appellant's] trial concluded[.]" Appellant's Post-Sentence Motion at 4

(unpaginated) (emphasis added). Because Appellant presents a *Brady* theory

---

[13] Indeed, the motion was entitled "Post-Sentence Motion for New Trial Due to After-Discovered Evidence, Pursuant to Pa.R.Crim.P. 720(c)" (Post-Sentence Motion).

for the first time on appeal, it is waived for our review. *See* Pa.R.A.P. 302(a) ("Issues not raised in the trial court are waived and cannot be raised for the first time on appeal."); *Commonwealth v. Miller*, 80 A.3d 806, 811 (Pa. Super. 2013).

## VI.  After-Discovered Evidence

In his second issue, Appellant incorporates the supporting arguments in his *Brady* claim, and concludes the trial court erred in denying relief on his claim of after-discovered evidence.  This Court reviews a trial court's determination on a claim of after-discovered evidence for an abuse of discretion.  *Commonwealth v. Trinidad*, 96 A.3d 1031, 1037 (Pa. Super. 2014) (citation omitted).

Appellant contends that although "there may not have been a formal, written deal in place, the sentence Ray received . . . was indicative of a benefit received."  Appellant's Brief at 12.  Appellant challenges the trial court's findings that the evidence would not likely have changed the outcome of trial. He maintains Ray was the only individual who placed him at the scene of the shooting, and thus Ray's credibility was "of paramount importance."  *Id.* at 13-14.  Appellant also avers his cell phone records showed his phone "did not appear to be in the vicinity of the shooting around the time of the shooting[.]" *Id.* at 10-11 n.1, 14.  We conclude no relief is due.

This Court has explained:

> To warrant relief [under Pa.R.Crim.P. 720(C)], after-discovered evidence must meet a four-prong test: (1) the

- 11 -

evidence could not have been obtained before the conclusion of the trial by reasonable diligence; (2) the evidence is not merely corroborative or cumulative; (3) the evidence will not be used solely for purposes of impeachment; and (4) the evidence is of such a nature and character that a different outcome is likely.

At an evidentiary hearing, an appellant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted.

*Commonwealth v. Rivera*, 939 A.2d 355, 359 (Pa. Super. 2007) (citation omitted & paragraph break added). "When evaluating the credibility and weight of the evidence, the fact-finder is free to believe all, part or none of the evidence." *See Trinidad*, 96 A.3d at 1038 (citation omitted).

As stated above, Ray's counsel, Attorney Perlow, as well as the prosecutor at Appellant's trial, Attorney Werner, both testified Ray did not have any plea deal or promise of leniency in exchange for his cooperation in Appellant's case. *See* N.T. PCRA Hearing at 27, 30, 65, 67. Importantly, the trial court credited this testimony. *See id.* at 82; Trial Ct. Op., 10/15/21, at 5. We do not disturb this credibility finding and, accordingly, do not disturb the court's finding that Ray did **not** receive a plea deal. *See Trinidad*, 96 A.3d at 1038.

Furthermore, Appellant's insistence — that the evidence would have undermined Ray's credibility — is misplaced. He was required to show "the evidence will **not** be used solely for purposes of impeachment[.]" *See Rivera*, 939 A.2d at 359 (emphasis added). Appellant's contention, that the evidence was necessary to undermine Ray's credibility, is thus meritless.

- 12 -

## VI. Sentencing Issue

In his final issue, Appellant challenges his sentence of life imprisonment without parole (LWOP). He contends the sentence both "[arose] from the sentencing guidelines" and is "illegal." Appellant's Brief at 15. Appellant claims a LWOP sentence is cruel and unusual punishment under the Eighth Amendment to the United States Constitution, as it is essentially "a sentence of 'death-by-incarceration.'" *Id.* at 16 (citation omitted). Appellant claims "[a] case challenging life without parole, a first of its kind, currently is before the Pennsylvania Supreme Court for consideration." *Id.* at 15, *citing* **Scott v. Pa. Bd. of Prob. & Parole**, 256 A.3d 483 (Pa. Cmwlth. 2021), *alloc. filed*, 16 WAP 2021 (Pa. 2021). No relief is due.

First, we agree with the Commonwealth that Appellant's LWOP sentence did not, as he contends, arise from any sentencing guideline. **See** Commonwealth's Brief at 19 n.5; Appellant's Brief at 15. Instead, the sentence was mandated by statute, specifically Section 1102(a)(1) of the Crimes Code, which provides: "[A] person who has been convicted of a murder of the first degree . . . shall be sentenced to death or to a term of life imprisonment . . . ." **See** 18 Pa.C.S. 1102(a)(1). Appellant's challenge thus goes to the legality, not the discretionary aspects of his sentence. **See** **Commonwealth v. Foster**, 17 A.3d 332, 345 (Pa. 2011) ("[W]here a sentencing court is required to impose a mandatory minimum sentence, . . . a defendant's challenge thereto sounds in legality of sentence and is therefore

nonwaivable."). *See also Commonwealth v. Rivera*, 238 A.3d 482, 500 (Pa. Super. 2020) ("A claim of cruel and unusual punishment challenges the legality of a sentence."). To this end, we disagree with the trial court's suggestion that this sentencing issue is waived for failure to raise it previously. *See* Trial Ct. Op. at 3. However, we conclude no relief is due.

Both the Eighth Amendment to the United States Constitution and Article I, Section 13 of the Pennsylvania Constitution provide that cruel and unusual punishments shall not be inflicted. U.S. Const. amend. VIII; Pa. Const. Art. I, § 13.

Our review of Pennsylvania decisional authority has not revealed any recent opinions addressing the constitutionality of a Section 1102**(a)** mandatory LWOP sentence for **first**-degree murder, as applied to an adult.[14] However, Pennsylvania courts have consistently rejected claims that a Section

---

[14] We note that in the 1980 decision of *Commonwealth v. Sourbeer*, 422 A.2d 116 (Pa. 1980), the defendant was convicted of a first-degree murder committed while he was 14 years old. *Id.* at 118. On appeal, he challenged the constitutionality of the mandatory LWOP sentence, and our Supreme Court held the sentence was not cruel and unusual punishment. *Id.* at 123. In light of the intervening case authority, holding a mandatory LWOP sentence for all juvenile offenders is illegal, however, we decline, in this particular case, to extrapolate the holding in *Sourbeer*. *See Commonwealth v. Batts*, 163 A.3d 410, 415 (Pa. 2017) (*Batts II*) (*Miller v. Alabama*, 567 U.S. 460 (2012) held "that a mandatory sentence of life in prison without the possibility of parole, imposed upon a juvenile without consideration of the defendant's age and the attendant characteristics of youth, is prohibited under the Eighth Amendment to the United States Constitution"). In any event, Appellant does not address *Sourbeer*.

1102**(b)** mandatory LWOP sentence, for a **second**-degree murder conviction,[15] was cruel and unusual punishment. *Rivera*, 238 A.3d at 503; *Commonwealth v. Henkel*, 938 A.2d 433, 446 (Pa. Super. 2007); *Commonwealth v. Middleton*, 467 A.2d 841, 845-46 (Pa. Super. 1983). In *Middleton*, this Court reasoned:

> [T]he selection of the penalty of life imprisonment, being a legislative determination, carries a strong presumption of validity, and of constitutionality. "Therefore, in assessing a punishment selected by a democratically elected legislature against the constitutional measure, we presume its validity. [A] heavy burden rests on those who would attack the judgment of the representatives of the people."
>
> *    *    *
>
> The offense of felony-murder is undoubtedly one of the gravest and most serious which can be committed. The taking of a life during the commission of an enumerated felony demonstrates a disregard for the property, safety, sanctity, integrity, and especially, the life of the victim. It is a crime of archviolence. Clearly, such an offense merits a severe penalty.
>
> . . . It is clear that the legislature contemplated that the seriousness of second degree murder — that is, murder in the course of a first degree felony — should be matched by an equally severe penalty.

*Middleton*, 467 A.2d at 846, 847.

Murder in the first degree is defined as "an intentional killing," while murder in the second degree is a homicide "committed while [the] defendant

---

[15] *See* 18 Pa.C.S. § 1102(b) ("[A] person who has been convicted of murder of the second degree . . . shall be sentenced to a term of life imprisonment.").

was engaged as a principal or an accomplice in the perpetration of a felony." 18 Pa.C.S. § 2502(a)-(b). We apply the principles above and decline to find an LWOP sentence for murder in the first degree is unconstitutional, where we have upheld the same sentence for a lesser degree of murder.

Furthermore, we disagree with Appellant's misleading characterization that the issue, of whether life sentences violated the Eighth Amendment, is currently before our Supreme Court for review. In his cited case, *Scott*, the petitioners were serving LWOP sentences for convictions of murder of the second degree. *Scott*, 256 A.3d at 485. They initially filed applications for parole with the Pennsylvania Board of Probation and Parole, which were denied. *Id.* at 486. The petitioners then filed, in the Commonwealth Court's original jurisdiction, a petition for declaratory judgment and injunctive relief, arguing their LWOP sentences were cruel and unusual punishment under the Pennsylvania Constitution. *Id.* at 485-86. The Commonwealth Court did not address the merits of the sentencing issue, but instead held it lacked jurisdiction to hear the petition. *Id.* at 492. On June 28, 2021, the petitioners filed a petition for allowance of appeal in our Supreme Court, which our review of the Court's docket indicates remains pending. *See Scott*, 16 WAP 2021. In light of all the foregoing, we conclude *Scott* offers no basis for relief.

## VII. Conclusion

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  7/29/2022